**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **TIMOTHY HALE** | : | |
| **Plaintiff,** | : | |
| | : | **No. 3:19-cv-1963 (VLB)** |
| **v.** | : | |
| | : | |
| **ANDREI IANCU,** | : | **February 23, 2021** |
| **Director of the U.S. Patent and** | : | |
| **Trademark Office,** | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION TO TRANSFER VENUE, [ECF 12]

This is an employment discrimination and retaliation case brought under Title VII, 42 U.S.C. § 2000(e) *et seq.*, by Timothy Hall ("Plaintiff"), a former patent examiner, against Andrei Iancu ("Defendant"), the Director of the U.S. Patent and Trademark Office ("USPTO") in the Director's official capacity. Before the Court is Iancu's motion to transfer venue to the Eastern District of Virginia, where the USPTO is headquartered. [Dkt. 12]. The motion poses an important issue which, in the Court's estimation, will present with increased frequency as a larger segment of the workforce works remotely.

For reasons set forth below, the Court DENIES Defendant's motion to transfer venue. The Court finds the parties' motion for a stay pending this ruling as moot.

1

## Background

The following facts are taken from the Plaintiff's Complaint [Dkt. 1] and the affidavits and accompanying documents filed by the parties in support of and in opposition to the motion to transfer venue.

The USPTO is an agency within the U.S. Department of Commerce responsible for granting and issuing patents, registering trademarks, and disseminating information concerning patents and trademarks to the public. 35 U.S.C. §§ 1, 2(a)(1)-(2). In accordance with Congress's direction, the USPTO maintains its headquarters in Alexandria, Virginia. [Dkt. 12, Ex. A. (Cedar Aff.) ¶ 7]; *see also* 35 U.S.C. § 1(b)(providing that the USPTO shall be headquartered in the Washington, D.C. area and may establish satellite offices to the degree necessary and appropriate). The Patent Office is segmented into "Technology Centers," focused on broad scientific and engineering areas, which are further organized into more specialized "Art Units." [Dkt. 12 (Def. Mem. in Supp.) at 2]; *see also* [Dkt. 15, Ex. B (Patel Aff.) ¶¶ 1-2](explaining duties of Supervisory Patent Examiner to oversee patent examiners within the Art Unit).

Plaintiff was hired by the USPTO as a patent examiner in 2012. [Dkt. 1 (Compl.) ¶ 9]. Plaintiff worked remotely for the USPTO pursuant to the Telework Enhancement Act Pilot Program and continued working remotely after relocating from Alexandria, Virginia to Connecticut in May 2014. [Dkt. 13-1 (Pl. Aff.) ¶¶ 9, 15]. The USPTO shipped all the necessary equipment for Plaintiff to perform his job remotely to his address in Connecticut. *Id*. ¶ 11. Meetings and trainings were

conducted remotely through a secure internet connection using USPTO equipment. *Id.* ¶ 12.

Although Plaintiff was working remotely, his official duty station remained in Virginia. [Dkt. 12 (Gov. Mem. in Supp.) at 3]. Neither party argues Plaintiff's duty station is significant to the Court's analysis or that there is a relevant telework agreement. *See* Telework Enhancement Act of 2010, 5 U.S.C. § 6502(b)(2) (requiring that executive agencies' teleworking policies contain a written agreement that "(A) is entered into between an agency manager and an employee authorized to telework, that outlines the specific work arrangement that is agreed to; and (B) is mandatory in order for any employee to participate in telework.").

After receiving performance awards, Plaintiff was selected to participate in a promotion program to obtain signatory authority, starting in May of 2017. [Compl. ¶¶ 11-12]. Plaintiff alleges that, beginning in November 2017, he was discriminated against by his then-supervisor John Hayes because Plaintiff is a Buddhist. *See generally id.* ¶¶ 12-27. Mr. Hayes essentially set a deadline to rebut deficiencies in a letter of concern at the conclusion of Plaintiff's participation in the promotion program when he knew that Plaintiff was away at a religious retreat. *Id.* Plaintiff filed an informal EEO complaint in January 2018, after which, Mr. Hayes and other managers subjected him to scrutiny and conflicting or nebulous work instructions. *Id.* ¶¶ 28-41. Plaintiff filed a formal complaint in April 2018. *Id.* ¶ 42.

Later that month, Neha Patel was assigned as Plaintiff's new supervisor. *Id.* ¶ 43. During the pendency of the EEOC investigation, Ms. Patel disciplined Plaintiff,

although the disciplines arose from issues that are allegedly related to his discrimination and retaliation complaints and resulted from contradictory instructions. *Id.* ¶¶ 45-74. Plaintiff filed another EEOC complaint during this period, as he learned that the EEOC had not received an earlier complaint filed with an investigator. *Id.* ¶¶ 82-83. Ms. Patel suspended Plaintiff for three days and removed a case from his docket, while Plaintiff was on another religious retreat. *Id.* ¶¶ 85, 87. Plaintiff alleges that Ms. Patel continued to retaliate against him, which made it impossible for him to meet his production goals. *Id.* ¶ 90.

On April 9, 2019, Plaintiff attended a meeting with Ms. Patel and the group director, James Tramell, and Plaintiff was emailed a Notice of Proposed Removal. *Id.* ¶ 92. The Notice of Proposed Removal provided Plaintiff with 15 days to respond, but the deadline to respond again fell when Plaintiff would be away on a religious retreat. *Id.* ¶¶ 92-97. Mr. Trammell refused to re-send the Notice of Proposed Removal, which would have extended Plaintiff's deadline to respond. *Id.* Plaintiff argues that the Notice of Proposed Removal was defective. *Id.* ¶ 100. In June 2019, Plaintiff met with Remy Yucel to submit an Oral and Written Reply to the Notice of Proposed Removal. *Id.* ¶ 102 Plaintiff requested Ms. Yucel to stay her decision until the EEO investigation was concluded so that Plaintiff could access documents from management utilized in the EEO investigation. *Id.* Ms. Yucel refused, and Plaintiff was terminated from federal service on July 26, 2019 for poor performance. *Id.* ¶ 103. The record does not indicate whether these meetings occurred virtually or in person.

The parties dispute where Plaintiff resided during the events in question. The Defendant argues that Plaintiff did not move to Connecticut until May 2019, after Ms. Patel proposed his termination. [Dkt. 12 (Def. Mem. in Supp.) at 5]. Defendant argues that, although his "duty station" remained in Alexandria, Virginia, Plaintiff worked at seven different remote locations of his choosing through the Telework Enhancement Act Pilot Program:

- Woodbridge, Connecticut from February 2014 to May 2016;
- Kingston, New York from May 2016 to August 2016;
- Woodstock, New York from August 2016 to October 2018;
- Roxbury, New York from October 2018 to January 2019;
- Margaretville, New York from January 2019 to May 2019; and
- Woodbridge, Connecticut from May 2019 to July 2019.

*Id.* at 3.

Plaintiff disputes this claim through an affidavit stating that he originally relocated to Connecticut in 2014, lived in New York from July 22, 2016 until March 2018, when he returned to Connecticut to care for his ailing mother. [Dkt. 13-1 (Pl. Aff.) ¶¶ 15-18]. Plaintiff stayed in Connecticut until January 9, 2019 and then returned in April 2019, where he remains. *Id.* ¶¶ 19-22. Plaintiff's affidavit states that he was residing and paying taxes in Connecticut during the entire time that Defendant asserts he was living and working in Roxbury, New York. *Id.* ¶¶ 13-14. In reply, Defendant filed copies of emails from Plaintiff to Ms. Patel dated October 15, 2018 and October 28, 2018 in which Plaintiff provided Ms. Patel new addresses in New York. [Dkt. 15 Ex. A]. For purposes of resolving the venue issue, it suffices to say that Plaintiff worked remotely, at times in either Connecticut or New York. He did not physically work in Virginia at any time relevant to the case. At the time the

USPTO made the final decision to terminate his employment, he was working and residing in Connecticut.

According to the affidavit of Brian Cedar, Branch Chief, Patents Team, Investigations and Adjudication Division in the Office of Human Resources for the USPTO, all of Plaintiff's supervisors and line managers work in Virginia. [Dkt. 12, Ex. A. (Cedar Aff.) ¶ 5]. Messrs. Hafiz, Trammel, Hayes, and Ms. Patel remain USPTO employees. *Id*. Mr. Cedar's affidavit states that, "the employment records related to Plaintiff's employment have been maintained and administered in Alexandria, VA," including records related to the progressive discipline and termination. *Id*. ¶ 8. Mr. Cedar's affidavit also states that "[s]ome records concerning former employees are stored at the National Personnel Records Center in St. Louis, Missouri or at a storage facility in Boyers, Pennsylvania." *Id*. ¶ 10. Defendant does not specify whether the records are electronically or physically stored.

## Discussion

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

"District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). In exercising this discretion, district courts consider: (1) the

plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties. *Id.* at 106–07 (citation omitted). "Courts also routinely consider judicial economy, the interest of justice, and 'the comparative familiarity of each district with the governing law.'" *Synca Direct Inc. v. SCIL Animal Care Co.*, No. 15-cv-2332 (RJS), 2015 WL 3883281, at *1 (S.D.N.Y. June 22, 2015) (citing *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012)). The movant must establish the propriety of the transfer by clear and convincing evidence. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)

As a threshold matter, the Court must determine whether the action could have been brought in the proposed transferee forum before determining whether the balance of equities tips in favor of discretionary transfer. *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 266 (D. Conn. 2012).

Title VII claims are subject to a special venue rule. 42 U.S.C. § 2000e-5(f)(3) provides:

> (3) Each United States district court and each United States court of appeals subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal

office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

Defendant does not contend that the current venue is defective. The parties agree that Plaintiff was working in Connecticut at the time of his termination and Plaintiff avers that he would have continued to work in Connecticut but for his termination. Therefore, venue is proper in Connecticut. 42 U.S.C. § 2000e-5(f)(3).

The propriety of venue in Connecticut and Plaintiff's choice of this venue under § 2000e-5(f)(3) does not foreclose discretionary transfer to another appropriate venue under 28 U.S.C. § 1404(a). *Richman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 441 F. Supp. 517, 520 (S.D.N.Y. 1977); see also 28 U.S.C.A. § 1404(a) (emphasis added)("…a district court may transfer *any* civil action to *any* other district or division where it might have been brought…"). Thus, the question before the Court is therefore whether the case could have been brought in the Eastern District of Virginia and, if so, whether the Defendant has established that equitable considerations tip decidedly in favor of transfer by clear and convincing evidence. *Lafarge N. Am., Inc.*, 599 F.3d at 114.

Title VII's special venue rule recognizes that there may be multiple proper venues available to an aggrieved employee. 42 U.S.C. § 2000e-5(f)(3)("Such an action may be brought in *any* judicial district in the State in which the unlawful employment practice is alleged to have been committed, …")(emphasis added); *Matias v. Nevelle Grande, LLC*, No. 01 CV 3666 (GBD), 2001 WL 849464, at *1 (S.D.N.Y. July 27, 2001)(… "[t]he phrase "any judicial district" is limited to those

district courts having a connection with the alleged discrimination.")(citing *Bolar v. Frank*, 938 F.2d 377 (2d Cir.1991)).

The final clause of 42 U.S.C. § 2000e-5(f)(3) expressly contemplates consideration of the forum where the respondent maintains their principle place of business for purposes of a motion to transfer venue. ("For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.").

Although the case could be transferred to the Eastern District of Virginia under the final clause of § 2000e-5(f)(3), the Defendant has not established by clear and convincing evidence that the discretionary factors tip decidedly in favor of transfer.

(a) <u>Plaintiff's choice of venue</u>

The Defendant argues that a plaintiff's venue choice should be given less weight because the case's operative facts have little connection to the venue. [Dkt. 12 at 5](citing *Dethier v. Nat'l Liquidators*, No. 3:09-CV-1507 WWE, 2010 WL 991573, at *5 (D. Conn. Mar. 18, 2010)). The Defendant further argues that "[t]he most significant factor to be decided on a motion to transfer venue is the convenience of party and non-party witnesses." [Dkt. 12 at 5] (quoting *Collins v. Kohl's Dep't Stores, Inc.*, No. 3:18-CV-00065 (VAB), 2018 WL 2926301, at *2 (D. Conn. June 11, 2018). In support, Defendant relies on Mr. Cedar's affidavit to show that, except

Plaintiff, all of the material witnesses work and reside in the Eastern District of Virginia and the management decisions were made there. *Id.*

In opposition, Plaintiff argues that his choice of forum is entitled to "great deference" and that his choice of home forum is presumed to be reasonable. [Dkt. 13 (Pl. Mem. in Opp'n.) at 7](citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Gross v. British Broadcasting Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-71 (2d Cir. 2001) (en banc)). Plaintiff argues that this factor militates against transfer.

Strictly speaking, the cases cited by Plaintiff for the proposition that his choice of forum is afforded great deference are not applicable. Each of the cases cited applied the doctrine of *forum non conveniens* and not discretionary transfer pursuant to § 1404(a).[1] In *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955), the U.S. Supreme Court explained that Congress revised, rather than strictly codifying, the doctrine of *forum non conveniens* because district courts were afforded more discretion to transfer venue under § 1404(a) than to dismiss a case pursuant to the judicial doctrine of *forum non conveniens*. "This is not to say that the relevant

---

[1] *Piper Aircraft Co.*, 454 U.S. 235 (affirming district court's application of *forum non conveniens* in wrongful death action arising from airplane crash in Scotland, involving exclusively Scottish subjects); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, (recognized as superseded by statute (28 U.S.C. § 1404(a)) in *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449, n. 2 (1994)); *Gross*, 386 F.3d 224 (reversing district court's dismissal of unjust enrichment and misappropriation of ideas claim brought in New York by U.S. plaintiff against British television network); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001)(vacating application of *forum non conveniens* in wrongful death action arising from accident in Colombia involving U.S. plaintiffs and U.S. domiciled corporate defendants)

factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." *Id*. at 32.

In deciding motions to transfer venue under § 1404(a), courts still give a plaintiff's choice of forum substantial weight. *Gottdiener*, 462 F.3d at 107. The deference accorded to plaintiff's choice of forum, however, is diminished substantially where the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred. *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 96 (S.D.N.Y. 1995). Defendant contends Plaintiff was not a resident of Connecticut during much of his employment. In evidentiary support of his claim, Defendant offers copies of emails from Plaintiff to Ms. Patel dated October 15, 2018 and October 28, 2018. In each Plaintiff provided Ms. Patel a new address in New York state. These emails were offered to support Defendant's claim that Plaintiff resided in Woodstock, New York, for at most, three months from August 2016 to October 2018; and in Roxbury, New York, for at most, four months from October 2018 to January 2019. [Dkt. 15 Ex. A]. The fact that Plaintiff lived in two different towns in the state of New York for seven months does not mean he was not a resident of Connecticut at the same time. Even if he was resident in New York state for seven months, he resided in Connecticut for most of his tenure. Plaintiff contends he is a resident of Connecticut and was a resident at the time of his termination. Defendant does not effectively refute his claim.

The cases cited by Defendant are also distinguishable. In *Collins v. Kohl's Dep't Stores, Inc.*, No., 2018 WL 2926301, at *5, the district court held that the class representative's choice of forum was given less weight because the case was a

putative, nationwide class action. *Dethier v. Nat'l Liquidators*, 2010 WL 991573 arises from the alleged wrongful repossession of a yacht in Florida. The plaintiffs in *Dethier* were residents of the forum state, but apart from receiving two phone calls, there were no other connections to the forum. *Id.* at 6. *Dethier* is also distinguishable in that the case involved several non-party witnesses, including eyewitnesses and law enforcement officers. *Id.* at 5-6.

In this case, Plaintiff's choice of forum is entitled to significant weight. "In general, the effect of Title VII's venue provision is to allow suit in the judicial district in which the plaintiff worked or would have worked." *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 504–05 (9th Cir. 2000)(holding that venue was proper in state where plaintiff worked from home office although challenged decisions regarding her employment were made elsewhere). "The venue provision was designed to prevent 'national companies with distant offices' from seeking to discourage claims by forcing plaintiffs to litigate far from their homes." *DeBello v. VolumeCocomo Apparel, Inc.*, 720 F. App'x 37, 40 (2d Cir. 2017)(citation and internal quotations omitted).

Given the purpose of Title VII's special venue rules and on the factual record here, the Court sees no justification to apply venue rules differently because an employee works from a home office with the employer's consent rather than at a brick-and-mortar satellite office. *See infra.* at 16-21. Accordingly, the Plaintiff's choice of forum is a significant factor militating against transfer.

12

**(b)** <u>Convenience of witnesses and parties</u>

"Courts in this District have emphasized the importance of the convenience of witnesses in the transfer analysis." *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 516-17 (D. Conn. 2011). To permit consideration of this factor, the party who contends that it weighs in their favor "must specify the identity of key witnesses and the nature of their likely testimony, and support these statements with affidavits." *Id*. Courts consider the "materiality, nature, and quality" of these witnesses. *Id*.

Most of the relevant witnesses reside in the Eastern District of Virginia. In a disparate treatment case relying on indirect evidence, the critical question is typically whether the employer has a legitimate, non-discriminatory basis for the adverse employment action and whether the articulated reason is pretextual for a discriminatory and/or retaliatory motive. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Thus, considering the Defendant's broad proffer of the materiality of the management witnesses' testimony and considering the highly specific allegations in the Complaint, the Court readily concludes that their testimony will be critical to the resolution of this case on the merits.

That said, courts have held that "the inconvenience of employees or agents of the parties does not weigh as heavily as inconvenience to non-party witnesses." *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 437 (E.D.N.Y. 2012) (citing *Payless Shoesource, Inc. v. Avalon Funding Corp.*, 666 F. Supp. 2d 356, 364 (E.D.N.Y. 2009)). Additionally, Plaintiff's opposition brief states that Plaintiff intends to depose

Defendant's party witnesses in the Eastern District of Virginia or remotely. [Dkt. 13 (Pl. Mem in Opp'n) at 9]. The Defendant does not identify any hardship from the possibility that four of its employees may need to travel from the D.C. metro area to Connecticut if they are called to testify at trial. As the Plaintiff notes, any operational burdens placed on the USPTO should its employees be required to testify can be reduced through teleworking capabilities. *See* [Dkt. 13 (Pl. Mem. in Opp'n) at 9]. Thus, the potential intrusion on the party-witnesses is minimal. However, the Court finds that this factor weighs in favor of transfer to a limited extend.

Neither party identifies any non-party witnesses whose attendance at trial may need to be compelled by subpoena. Therefore, this factor is neutral to transfer. *Wilson*, 821 F. Supp. 2d at 517.

The convenience of the parties is also neutral because the proposed transfer would shift the inconvenience from the Defendant to the Plaintiff. If the case were transferred, Plaintiff would now be required to travel and likely with a greater frequency than the Defendant's party witnesses. *Compare to Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 118 (S.D.N.Y. 2005)(granting transfer from New York to California because it would eliminate burden on California defendant and plaintiff would be required to travel from London regardless of venue). Accordingly, the convenience of the parties is also neutral to transfer.

### (c) Location of Books and Records

The Defendant argues that all the relevant documents and records are housed at USPTO headquarters in Virginia, which favors transfer. [Dkt. 12 (Def. Mem. in Supp.) at 6]. The affidavit of Brian Cedar, Branch Chief, Patents Team, Investigations and Adjudication Division in the Office of Human Resources for the USPTO, is ambiguous at best. It does not establish that Plaintiff's employment records are in the Eastern District of Virginia. [Dkt. 12, Ex. A. (Cedar Aff.) ¶ 8]. Mr. Cedar's affidavit states that: "Throughout the period of Plaintiff's employment and at present, the employment records related to Plaintiff's employment *have been* maintained and administered in Alexandria, VA. The USPTO's records related to Plaintiff's Oral Warning, Written Warning, Notice of Proposed Removal, and termination *are* maintained and administered in Alexandria, Virginia." *Id.* (emphasis added). The change in the verb tense is significant. If Plaintiff's records were in Virginia, Mr. Cedar would have simply said that, rather than stating where they had been stored and adding where former employees' employment records are stored. At best, Defendant does not know where the records are stored, and admits they may not be in Virginia.

Moreover, as Plaintiff argues, "…modern technology limits the weight of this factor: although the location of relevant documents is entitled to some weight, modern photocopying technology and electronic storage deprive this issue of practical or legal weight." *Wilson*, 821 F. Supp. 2d at 517. This factor does not weigh in favor of transfer at all because the Defendant has not established that

Plaintiff's employment records are in Virginia or that they are not in readily transferrable electronic form.

### (d) Locus of operative facts

The more difficult issue lies in identifying the locus of operative facts for a discrimination claim brought by a teleworking employee. The Defendant argues that Virginia is the locus of operative facts because it was:

(a) Plaintiff's official employment duty station;
(b) where each employment decision Plaintiff challenges was made;
(c) where Plaintiff's EEO claims were filed and investigated; and
(d) where the decision to remove Plaintiff from federal service was proposed, evaluated, and effectuated.

[Dkt. 15 (Def. Repl. Br.) at 4].

Defendant argues that "[c]ourts have repeatedly held that the location where an employment decision was made is the appropriate locus of material facts in an employment dispute. [*Id.*] (citing as examples *Jones v. Walgreen, Co.*, 463 F. Supp. 2d 267, 277-78 (D. Conn. 2006) and *Wilson*, 821 F. Supp. at 518). Both cases are distinguishable, and the applicable rule is more nuanced. *Jones* was a nationwide putative class action alleging systemic sex discrimination in assignment of stores to female managers. 463 F. Supp. 2d at 269-70. The district court distinguished the case as such: "While the locus of operative facts with respect to Ms. Jones is primarily in Connecticut, the Court must consider the fact that this case may become a nationwide class action. Because the allegations involve claims of pervasive and systemic discrimination, the Court finds that the locus of operative facts is likely to be in Illinois. Any systemic policy that resulted in unequal pay for

female employees necessarily would have originated at the company's headquarters." *Id.* at 277. In *Jones,* the court recognized the locus of operative facts would have been in plaintiff's resident state but for the fact that the case was a nationwide class action with class members who worked throughout the nation. The court's rationale for concluding the employer's resident state was the proper forum does not apply in this case.

*Wilson* was a RICO class action alleging that a members-only discount wholesale club improperly retained manufacturer rebates rather than passing the discount onto its members. *Wilson*, 821 F. Supp. 514-15. There, all the business activities that were the subject of the class members' fraud claims were conducted from the defendants' corporate headquarters in Indiana. *Id.* at 518.

Plaintiff argues that the locus of operative facts was Connecticut because his employment was based here as the USTPO rules merely required that he be physically present and work from his designated location. [Dkt. 13 (Pl. Mem in Opp'n) at 12-13]. Connecticut is also the judicial district in which the unlawful employment practice is alleged to have been committed. Plaintiff complained of discrimination while working from Connecticut. Plaintiff claims Defendant retaliated against and terminated him discriminatorily while he was living in Connecticut for allegedly subpar work performed in Connecticut. [*Id.* at 13]. The conveyance of the termination is pivotal; because without that, the decision to terminate him would have no effect. The Court agrees with Plaintiff that his employment was based in Connecticut at the time he was terminated, which is the

most significant adverse action alleged, and therefore the locus of operative facts is Connecticut.

Defendant's reply brief cites *Lomanno v. Black*, 285 F. Supp. 2d 637 (E.D. Pa. 2003) as an example of a case where transfer from the venue where the plaintiff-employee teleworked to the venue where the defendant-employer was headquartered was appropriate. [Dkt. 15 at 5-6]. The case is also distinguishable from the facts here. In *Lomanno*, the plaintiff worked primarily from home in Pennsylvania, but occasionally traveled to the company's headquarters in Virginia. *Id.* at 638-39. During a trip to Virginia, the individual defendants claimed that Lomanno made inappropriate sexual comments and overtures to a co-worker. *Id.* at 639. Following his termination, Lomanno sued the individuals who reported the alleged sexual harassment for defamation and tortious interference and his employer for gender discrimination. *Id.* The district court found that the locus of operative facts was Virginia because it was where the employer handled its investigation and where the decision to terminate him was made. *Id.* at 645. Unlike *Lommano*, the events leading up to Plaintiff's termination did not occur in Virginia, i.e Plaintiff's performance while teleworking.

Further, to the extent the district court relied on the location of the corporate decision, it does not represent the majority rule for single plaintiff disparate treatment discrimination claims. *See* 4 Larson on Employment Discrimination § 78.08 ("In general, courts have ruled that venue is proper at the local office where the complaining employee worked, not where the company is headquartered, even when the headquarters is where the discriminatory decision was made."). The

Court finds the Ninth Circuit's decision in *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, **212 F.3d 499** persuasive. There, the circuit court reasoned that the adverse employment decision occurred in the jurisdiction where the employee actually worked and thus where the adverse employment decision was implemented, and its consequences felt. *Id.* at 505. The Ninth Circuit considered the policy consequences of permitting remote employees to maintain suits in the jurisdictions where they maintain their home offices:

> …could leave corporations which employ people in far-away home offices vulnerable to suit in distant fora, a problem which it warns will increase in the internet age…potential plaintiffs could evaluate their preferred locations for bringing a lawsuit and simply locate their home offices within that jurisdiction. This forum shopping scenario seems fanciful; we doubt that many people would reorganize their entire lives by moving home offices to other judicial districts in anticipation of as yet uncommitted acts of discrimination, in order to file Title VII actions in those districts. It is of more concern that national companies with distant offices might try to force plaintiffs to litigate far away from their homes… Forcing the plaintiff to litigate in a federal court on the other side of the country would significantly increase the plaintiffs' costs of prosecuting her action… [it] create[s] a substantial burden on plaintiffs working for national sales companies, a burden inconsistent with the beneficent purposes of Title VII.

*Id.* at 505 (internal parentheticals omitted).

Defendant does not argue that Plaintiff relocated to Connecticut for forum shopping purposes. Instead, the Defendant emphasizes that Mr. Hale voluntarily worked in Connecticut and his duty station remained in the Eastern District of Virginia. [Dkt. 15 (Def. Repl. Br.) at 5]. However, the Defendant neglected to explain the significance of maintaining a duty station in Virginia while living and physically working in another jurisdiction with the employer's knowledge, consent and, in this case, assistance. Moreover, the voluntariness of the arrangement is without import

because the USPTO consented to the teleworking arrangement, which was entered into long before the alleged discrimination and retaliation occurred and pursuant to a congressional policy of promoting teleworking.

As noted in *Passantino*, the place where the alleged discrimination is felt is a significant factor. Connecticut is the judicial district in which the unlawful employment practice would be felt. Plaintiff resides in Connecticut and would be eligible for unemployment and other public benefits and services because he was unemployed. His loss of income would also have an economic impact in the state.

This is not to say that the location of a remote employee's home office will always be the locus of operative facts. *See, e.g. Rossi v. Ferring Pharm.*, No. 3:15-CV-01367 (VLB), 2016 WL 593440, at *6 (D. Conn. Feb. 12, 2016) (locus of operative facts lied in the geographic area serviced by sales representative where the events leading to the termination occurred, not location of plaintiff's home office or the employer's headquarters).

In the future, parties may seek to resolve the jurisdictional uncertainty from teleworking employees by entering into reasonable forum selection agreements. *See, e.g. DeBello v. VolumeCocomo Apparel, Inc.*, 720 F. App'x 37 (2d Cir. 2017) (enforcing forum selection clause in Title VII requiring litigation to be brought in California state court for executive employee living and working in New York); *but see* ("... we do not foreclose the possibility that a conflict with Title VII's special venue provision, combined with other factors, may render a forum selection clause

unenforceable. We hold simply that DeBello has not made a sufficient showing here").

The Court finds the locus of operative facts is Connecticut, which militates against transfer.

### (e) The parties' relative means

Mr. Hale argues that the factor considering the relative means of the parties also favors maintaining venue in Connecticut. [Dkt. 13 (Pl. Mem. in Opp'n) at 14-15]. Mr. Hale argues that he remains unemployed and his ability to obtain employment in the private sector is restricted by federal regulations. *Id.* at 14. The Defendant's papers do not address this factor.

The USPTO is of course a federal agency represented by the Civil Division of the U.S. Attorney's Office. It has significant resources to bear on the litigation, regardless of whether the case is venued in Connecticut or Virginia. While the USPTO argued that it would be inconvenient to litigate this case in Connecticut, it does not claim that it was suffer a hardship if required to do so. Accordingly, this factor weighs against transfer.

### (f) Judicial economy

The Court is troubled by the Defendant's argument that transfer to the Easter District of Virginia would advance judicial economy because the USPTO regularly litigates employment disputes there and, therefore, the district court is familiar with the USPTO's performance metrics. [Dkt. 12 (Def. Mem. in Supp.) at 6-7]. The

Defendant cites *Stewart v. Ross*, Case No. 1:18-cv-130 (TNM), ECF No. 25 (D.D.C. Oct. 12, 2018) as an example of an instance where the district court granted a motion to transfer venue for an USPTO employee's discrimination action to the Eastern District of Virginia. *Id.* at 7. The framing of the Defendant's argument implies that this is a regular occurrence and was the result of recognition by other courts that the Eastern District of Virginia has expertise in employment matters involving the USPTO.

The Court agrees with Plaintiff that *Stewart* is inapposite. Stewart was a former patent examiner who worked at USPTO headquarters in Virginia and commenced a *pro se* disability discrimination and retaliation action against the U.S. Secretary of Commerce in the U.S. District Court for the District of Columbia. *Stewart v. Ross*, Case No. 1:18-cv-130 (TNM), ECF No. 25 (D.D.C. Oct. 12, 2018) at 1. The district court transferred the action pursuant to 28 U.S.C. § 1406(a) because it was brought in the wrong venue as the Secretary of Commerce was not the proper defendant. *Id.* at 2-3. The memorandum order does not concern any findings by the district court that the Eastern District of Virginia would be a more suitable venue because of its experience in other employment claims concerning the USPTO.

The case before the Court is unrelated to any litigation pending in the Eastern District of Virginia and thus familiarity with the parties and proceedings is not a relevant concern. The Court places no weight on the fact that the USPTO has been a defendant in unrelated employment cases in the district where it is headquartered. Title VII governs this case and the statute applies broadly and in a

22

vast array of employment environments, ranging from small manufacturing firms and local restaurants, to universities, multi-national corporations, and government agencies. To promote transfer to the district where a company or government agency is headquartered because the presiding judge may be more familiar with their business or human resource processes would frustrate the purposes of Title VII's special venue provision; it would simply "discourage claims by forcing plaintiffs [working for national entities] to litigate far from their homes." *See DeBello*, 720 F. App'x at 40.

Knowledge of the USPTO's performance metrics does not justify transfer. It is not the role of courts to apply an employer's performance metrics and evaluate its employment decisions. *See Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997)("This Court does not sit as a super-personnel department that reexamines an entity's business decisions."). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988).

While knowledge of USPTO's performance metrics may be useful to ferret-out pretext, it is not essential. If an employee establishes a prima facie case of discrimination, the defendant must rebut that presumption by articulating a non-discriminatory reason for its decision and explain its reasoning. Thus, the Defendant would have to articulate its performance metrics to the extent relevant with sufficient clarity for any court to understand its argument as to why the employer's decision was not based on a discriminatory reason. The court must

23

then decide whether the employers proffered basis for the adverse action is pretextual for discrimination. *Reeves v. Sanderson Plumbing Prod.*, Inc., 530 U.S. 133, 143 (2000). Since the basis of a court's decision must appear on the record of the case and not in the recesses of the mind of the presiding judge, a court's knowledge of an employer's performance metrics, production processes, or personnel policies is not a valid reason to transfer the case.

If individual employees were required to bring suit in states where they do not reside, they would be less able to identify and retain competent counsel and to forge a strong attorney-client relationship, so important to the just and efficient resolution of legal disputes. This serves judicial efficiency in two respects. The logistical proximity of counsel facilitates an attorney's due diligence to determine whether a prospective client has a meritorious case. At the pre-filing stage, an attorney's due diligence serves as a screening function. It could also assist a prospective client in evaluating the totality of the circumstances and to consider alternatives to litigation before bringing a claim, e.g. pre-suit negotiations. If they agree to enter an attorney-client relationship and commence an action, the case is more likely to proceed in an orderly fashion with the assistance of counsel. Since an employee in a distant forum will be less likely to forge a strong relationship with an attorney if they can identify and retain one at all, they will be more likely to proceed *pro se*. Consequently, the just and efficacious resolution of the action will likely be delayed, regardless of whether the suit is ultimately meritorious.

On the other hand, governmental and business entities are more likely to operate in multiple jurisdictions, employ in-house counsel, and have existing

relationships with regional or national law firms. Corporate and government defendants have a greater capacity to retain suitable counsel outside of their resident state and will be required to defend the action regardless of where it is venued. These defendants are more likely to have experience in litigation and will seek out the efficient resolution of disputes as a matter of business or operational necessity. In this case the USPTO is represented by the United States Attorney. The district of Connecticut has a bevy of highly qualified trial attorneys on staff to represent federal agencies such as Defendant.

Thus, allowing teleworkers to sue their employers in the states where they reside and maintain their home offices furthers judicial efficiency and the administration of justice by promoting access to effective counsel, generally without materially disadvantaging employers.

### (e) The interests of justice

Businesses and governments are increasingly remolding their relationship with the producers of their goods and services. This remolding is manifest in the gig economy and telework, which are becoming increasingly prevalent across the economic spectrum. In the gig economy, rather than hiring employees and providing traditional benefits, these entities are increasingly engaging individuals to produce their goods and services at their own expense and risk. Under a different model, the teleworker retains their status as an employee but absorbs the employer's business expenses, including rent, furniture, equipment, utilities, internet service, office supplies and telephone costs, often without any

compensation. While these changes may provide an advantage to some workers, the tradeoff is masked by the convenience, the necessity of childcare, and most recently, the safety of teleworking during the pandemic. Consequently, the worker's economic bargaining power and their ability to muster the support of their co-workers has declined relative to their employers. This shift is particularly acute when considering the difficulty of detecting discrimination in the remote workplace.

Discrimination is often unmasked when an employee learns that another worker outside of their protected class is being treated more favorably or when a manager persistently uses derogatory language. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467-68 (2d Cir. 2001). Such behavior is more likely to be uncovered through an employee's direct observation and personal interactions with their peers and managers. The separation and isolation of gig and remote work makes detecting and ultimately proving discrimination more difficult because these interactions are less frequent and occur virtually. It also makes employee efforts to coordinate and organize to remedy systemic discrimination more difficult. This would suggest that fewer discrimination and retaliation actions will be brought by remote employees. Those that do proceed will face the additional burdens of deposing a disburse workforce.

To force a remote employee "…to litigate in a federal court on the other side of the country would significantly increase the plaintiffs' costs of prosecuting her action… [it] create[s] a substantial burden on plaintiffs working for national sales companies, a burden inconsistent with the beneficent purposes of Title VII."

*Passantino*, 212 F.3d at 505. A rule promoting transfer of venue for discrimination claims brought by remote employees would only exacerbate the existing challenge of detecting and ultimately remediating and preventing discrimination in an ever-increasing virtual workplace.

## Conclusion

For the aforementioned reasons, the Court finds that the balance of discretionary factors warrants DENIAL of the Defendant's motion to transfer venue. [Dkt. 12].

The Court finds the parties' motion for a stay pending this ruling as moot. [Dkt. 17]. Since the Court did not stay discovery and since the filing of a motion, including a motion to stay or to transfer venue, does not stay discovery unless a court so orders, the Court would like to believe the parties have abided by its standing order and have been proceeding with discovery diligently. After all, discovery would have to be conducted even if the case was transferred. Appreciating that the parties may have had the mistaken view that waiting to proceed with discovery would have preserved judicial resources, the Court will enter a scheduling order that extends time beyond the deadline that the parties' requested in the interest of judicial efficiency.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: February 23, 2021

27