# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TIMOTHY HALE,                    :
    *Plaintiff*,                 :
                                 :
      v.                       :    Civil No. 3:19-CV-1963(OAW)
                                 :
ANDREW HIRSCHFELD, *Director of* :
*the United States Patent and*   :
*Trademark Office*               :
    *Defendant*.                 :

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Timothy Hale ("Mr. Hale" or "Plaintiff") brings this action against his former employer, the United States Patent and Trademark Office (hereinafter "the USPTO" or "Defendant"), and its Director, Andrew Hirschfeld, alleging that the USPTO unlawfully terminated his employment based on his religion, and retaliated against him after he filed a claim with Defendant's Office of Equal Employment Opportunity and Diversity ("OEEOD"). It is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). The USPTO has moved for summary judgment on the grounds that the undisputed facts do not give rise to actionable claims under Title VII for either religious discrimination or retaliation.

For the reasons stated herein, the court **<u>GRANTS</u>** the USPTO's motion for summary judgment.

## I.    FACTS

The following facts are taken primarily from the parties' Local Rule 56(a) Statements of Fact. *See* Def.'s L.R. 56(a)(1) Stmt., ECF No. 31-2 ("Def. Stmt."); Pl.'s L.R.

56(a)(2)(i) Stmt., ECF No. 35-1 ("Pl. Stmt."); Pl's L.R. 56(a)(2)(ii) Stmt. of Addl. Material Facts, ECF No. 35-1 ("Pl. Addl. Stmt.").  All ambiguities in the record are construed in Plaintiff's favor.  All facts are undisputed, unless indicated otherwise:

From February 27, 2012, to July 26, 2019, the USPTO employed Mr. Hale as a patent examiner.  Def. Stmt., ECF No. 31-2 at ¶ 1.  At all relevant times, Defendant assigned him to USPTO Technology Center 3600, Art Unit 3685, where he examined patent applications "in the area of business processing using cryptography."  *Id.* at ¶ 2. In that role, he was supervised by a Supervisory Patent Examiner ("SPE").  *Id.* at ¶ 3.

USPTO employees are subject to a "Rules of the Road Policy," governing workplace decorum.  The policy defines email etiquette and prohibits use of email to "transmit offensive material or harass anyone in any way."  *Id.* at ¶ 46.  Defendant's "Workplace Violence Policy," prohibits "[v]iolence, threats, harassment, intimidation, bullying, and other aggressive or disruptive behavior . . . ."  *Id.* at ¶ 47.

The USPTO's "'Religious Compensatory Time Policy' provides a mechanism through which employees can request accrual and use of paid time off for religious activities."  *Id.* at ¶ 16.

The USPTO's Performance Appraisal Plan ("PAP") outlines the elements for evaluating USPTO patent examiners' performance.  *Id.* at ¶¶ 5–6.  The examiners' work includes "office actions," *id.* at ¶ 7,[1] which must be completed within certain time limitations and be of "acceptable quality."  *Id.*  The USPTO evaluates patent examiners based on "critical elements" of "production, quality, and docket management," in addition to the non-critical element of "stakeholder interaction."  *Id.* at ¶ 8.  In order to be

---

[1] Office actions "explain the Agency's reasons for denying or allowing a patent."  *Id.*

considered "Fully Successful" examiners must receive at least 95% in the Production and Docket Management categories and anything lower than 88% "is considered Unacceptable." *Id.* at ¶ 12.

Procedures in place at all times relevant to Plaintiff's claims provided that upon deficient performance in one of the critical elements, the USPTO would issue the examiner an "Oral Warning." *Id.* at ¶ 15. Lack of improved performance during the "Oral Warning period," then resulted in a "Written Warning." *Id.* If, during the "Written Warning period," the examiner failed to sufficiently improve the performance issues, the USPTO would issue "a Notice of Proposed Removal for deficient performance." *Id.*

Although the USPTO states that the system of review for patent examiners is "highly automated and formulaic," *id.* at ¶ 11, Mr. Hale objects and states that "a patent examiner's scores are highly dependent upon the number of Office Actions approved and/or returned by their SPE." Pl. Stmt., ECF No. 35-1 at ¶ 11.

"'Autocount' is a feature in the USPTO's performance management system that automatically credits eligible patent examiners for work they have turned in before it has been reviewed by a supervisor." Def. Stmt., ECF No. 31-2 at ¶ 43. An examiner's loss of Autocount generally is based on "low productivity and docket management scores." *Id.* at ¶ 44.

From approximately 2016 through April 29, 2018, Mr. Hale's "first-line" USPTO supervisor was John Hayes ("Mr. Hayes"), a Supervisory Patent Examiner ("SPE"). *Id.* at ¶ 3.[2] Mr. Hayes evaluated Mr. Hale's work and he addressed Plaintiff's leave requests.

---

[2] Plaintiff clarifies that Mr. Hayes continued to supervise some of his work after that period. Pl. Stmt., ECF No. 35-1 at ¶ 3.

*Id.* at ¶ 4.  As Mr. Hale's supervisor, Mr. Hayes signed "all Plaintiff's office actions before issuance," which was "known as 'signatory authority.'"  *Id.* at ¶ 22.

Mr. Hale notes that he "was fully successful or above in all his critical elements from February 27, 2012 until the April 27, 2018 review period."  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 1.  During this time he "received numerous performance awards for Production and Docket Management, received several cash and non-cash awards for exemplary performance, was promoted from a GS-11 Step 1 to a GS-13 Step 4, and was selected to participate in the signatory review program to obtain Partial Signatory Authority ("PSA Program")."  *Id.* at ¶ 2.  Plaintiff notes that "[d]uring this 6-year time period, [he] never received a disciplinary complaint or a warning."  *Id.* at ¶ 3.

"On May 28, 2017, Plaintiff began participation in the USPTO's . . . PSA Program."  Def. Stmt., ECF No. 31-2 at ¶ 23.  The Program provides patent examiners with "temporary signatory authority for a trial period subject to an evaluation at the end of the program by a panel of SPEs."  *Id.*  During the trial period, examiners submit seventeen cases for review and approval, seven of which are selected by the examiner, and ten of which are selected by a Technology Center designee.  *Id.* at ¶ 25.  On May 31, 2017, the USPTO granted Mr. Hale partial signatory authority for a temporary period and informed him of the submission and review procedures. *Id.* at ¶ 26.  According to USPTO policies, the determination of a permanent PSA award is made "'[n]o later than two [pay periods] after' the trial period ends."  *Id.* at ¶ 27.

Mr. Hale is a Zen Buddhist.  *Id.* at ¶ 17.  Mr. Hayes became aware of this fact on September 15, 2017, the date on which Mr. Hale emailed him to request time off for the

purpose of attending "a religious retreat . . . (the '2017 Retreat')."  *Id.* at ¶ 18.  Mr. Hayes approved the request.[3]  *Id.* at 21.

Mr. Hale's PSA trial period ended on November 25, 2017, and Mr. Hayes informed Mr. Hale that the date for the USPTO's determination of his PSA overlapped with his requested religious time off.  *Id.* at ¶ 28.  Mr. Hale notes that the outside date for a decision was December 23, 2017, eight days after his return from the 2017 Retreat.  Pl. Stmt., ECF No. 35-1 at ¶ 27.

From November 27, 2017– December 15, 2017,[4] Plaintiff used compensatory, religious time to attended the retreat.  *Id.* at ¶ 18.

A letter dated November 27, 2017, outlined errors in Mr. Hale's cases and on that date, Mr. Hayes emailed Plaintiff, informing him of the errors.  Def. Stmt., ECF No. 31-2 at ¶ 31.  Mr. Hayes's email also informed Mr. Hale of a December 4, 2017 deadline for rebuttal, and noted that Plaintiff could request an extension of that deadline to respond.  *Id.* at ¶¶ 31–32.  Twenty-one minutes later, Mr. Hale indicated that he would seek such an extension.  *Id.* at ¶ 32; Mr. Hayes and Plaintiff's Emails re: Rebuttal ("Rebut. Emails"), ECF NO. 31-4 at 64–65.  To be clear, Mr. Hale's email simply noted his intention to later request an extension of time within which to respond to the identified errors, but he did not at that time state how long of an extension he would seek; his email, in its entirety, stated, "OK.  In that case, I'll request the extension to the response."  ECF No. 31-4 at 65.  Mr. Hayes responded four minutes later, and indicated that any extension request

---

[3] After denying this initial request for failure to select a category of leave for which Plaintiff had accrued time, Mr. Hayes approved a corrected, re-submitted request.  *Id.* at ¶ 21.
[4] Defendant states that Plaintiff requested from November 29, 2017 through December 15, 2017, *id.* at ¶ 18.  Plaintiff clarifies that the dates of the request were "November 27, 2017 through December 15, 2017."  Pl. Stmt., ECF No. 35-1 at ¶ 18.

would have to include a date certain on which Mr. Hale could file his rebuttal.  ECF No. 31-2 at ¶ 32; ECF No. 31-4, Def. Ex. A-6 at 64–65.  Plaintiff did not respond to this last email.  Def. Stmt., ECF No. 31-2 at ¶ 32.  Mr. Hale states that he did not respond to the final email because he had boarded his flight to the 2017 Retreat and did not receive it.  Pl. Stmt., ECF No. 35-1 at ¶ 32.[5]

In a December 14, 2017 letter, the USPTO denied Mr. Hale's request for PSA.  Def. Stmt., ECF No. 31-2 at ¶ 29.  Mr. Hayes states he was not a reviewer with respect to Plaintiff's application, *id.* at ¶ 30, but Plaintiff notes Mr. Hayes "hosted the panel discussion."  Pl. Stmt., ECF No. 35-1 at ¶ 30.  Technology Center Director ("TC Director") Tariq Hafiz ("Mr. Hafiz"), who "had no knowledge of Plaintiff's religion," made the final decision to deny Mr. Hale's application for a permanent PSA.  Def. Stmt., ECF No. 31-2 at ¶¶ 33–34.

Also on December 14, 2017, Mr. Hayes emailed Mr. Hale and informed him of the denial.  *Id.* at ¶ 35.  Mr. Hayes stated that "[a]lthough this is a letter of denial, you have the opportunity to appeal this decision and rebut the errors that have been charged, if you choose to do so."  Hayes and Pl. Emails re: Rebuttal ("Rebut. Emails"), ECF No. 31-4, Def. Ex. A-6 at 64.

On January 3, 2018, and January 10, 2018, Mr. Hayes emailed Mr. Hale inquiring whether he planned to "rebut any of the errors" and appeal the decision, respectively.  *Id.* The parties dispute whether Mr. Hale submitted an "appeal" or a "rebuttal."

---

[5] Although Plaintiff states that he had boarded the flight, Mr. Hale sent his last November 27, 2017 email at 12:49 PM, Plaintiff's Emails re: Rebuttal ("Rebut. Emails"), ECF No. 31-4, Def. Ex. A-6 at 64; Mr. Hayes sent his at 12:53 PM, *id.* At 64–65, and the boarding time on Plaintiff's November 27, 2017 boarding pass was 21:30, or 9:30 PM.  Boarding Pass, ECF No. 35-8, Pl. Ex. 6 at 2.

On January 4, 2018, Mr. Hale initiated an informal complaint with Defendant's OEEOD, against Hayes.  Def. Stmt., ECF No. 31-2 at ¶ 55; Pl. Addl. Stmt., ECF No. 35-1 at ¶ 4.  Mr. Hayes became aware of Mr. Hale's EEO filing that day.  Def. Stmt., ECF No. 31-2 at ¶ 56.

With prior approval from their SPE, examiners may use "paid leave time to participate in the [equal employment opportunity] process," pursuant to the "Equal Employment Opportunity Policy and Complaint Processing Procedure."  *Id.* at ¶ 58.  On January 8, 2018, Mr. Hale became aware of the requirements of this procedure.  *Id.* at ¶ 59.

From January 2018 through April 29, 2018, "Plaintiff received multiple returns of his work; that is, Plaintiff's office action was sent back to him by his supervisor, Mr. Hayes because it contained errors or needed additional edits before it could be sent to the applicant."  Def. Stmt., ECF No. 31-2 at ¶ 40.  Plaintiff denies, however, that his "work contained more errors than previously or that it required additional edits."  Pl. Stmt., ECF No. 35-1 at ¶ 40.[6]  Defendant states that, during this period, Mr. Hayes "was paying close attention to Plaintiff's work because he had failed the PSA Program and Mr. Hayes wanted to ensure Plaintiff passed next time."  Def. Stmt., ECF No. 31-2 at ¶ 42.  Plaintiff denies this fact and states that "following Plaintiff's first informal EEO Complaint, Mr. Hayes began to return items to Plaintiff that did not warrant return."  Pl. Stmt., ECF No. 35-1 at ¶ 42.

---

[6] Plaintiff admits that "[i]n 2015, Mr. Hayes had 76 returns to Plaintiff (1 coaching/mentoring error, 4 supported his rating); in 2016, there were 57 returns (2 coaching/mentoring, 3 supported his rating); in 2017, there were 36 returns (2 clear errors, 1 coaching/mentoring, 1 supported his rating). In 2018 (until Plaintiff was transferred to Ms. Patel in or around April 2018), Plaintiff had 76 returns (5 coaching/mentoring and 3 clear errors)."  Def. Stmt., ECF No. 31-2 at ¶ 41.

On February 4 and 5, 2018, Plaintiff emailed examiners in his unit and Mr. Hayes interpreted the emails to be "accusatory and hostile," in violation of USPTO policy.[7]  Def. Stmt., ECF No. 31-2 at ¶¶ 48–49.  Plaintiff states that the emails did not contain anything inappropriate or in violation of the stated policy.  Pl. Stmt., ECF No. 35-1 at ¶ 49.

On February 6, 2018, after consultation with the USPTO Office of Human Resources, "Mr. Hayes issued Plaintiff a non-disciplinary Letter of Counseling addressed to his inappropriate email communications . . . ."  Def. Stmt., ECF No. 31-2 at ¶¶ 50–51. Plaintiff notes that the letter directed him to bring concerns about other employees to Hayes.  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 6.

On February 21, 2018, Plaintiff submitted his written response to the errors in the December 14, 2017 PSA denial letter.  Def. Stmt., ECF No. 31-2 at ¶ 37.

Mr. Hale states that "[o]n March 15, 2018, Mr. Hayes disciplined [him] for bringing concerns about Steven Kim to Hayes' attention."  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 8. He cites only his own affidavit in support of this fact.

In a letter dated March 19, 2018, Mr. Hafiz responded to Plaintiff's submission with a denial of PSA, upholding the prior decision.  Def. Stmt., ECF No. 31-2 at ¶ 39; Mr. Hafiz

---

[7] In the emails, Plaintiff made the following statements: "could you please explain why you consistently apply a different standard to your junior examiner's work?;" "[h]ave you bothered to actually read these cases. I find the response that the judges 'don't what they're doing' a little ridiculous and disingenuous;" "[i]s there something going on here, where you only apply negative case law to junior examiner's work?;" "[s]ome of the behavior by certain people in this AU is disturbing. It's starting to become apparent that there's a blatant disregard for the law;" and "[a]re you actually examining any applications as the AU Trainer? I think it's a relevant question that should be addressed in the meeting as you may be incentivized to find errors in junior examiner's work. If you think about that wouldn't be fair because you can claim time for picking apart a junior examiner's actions, but the junior examiner has to redo the work. Is there any specific documentation available about what an AU trainer does?"  Plaintiff's February 2018 Emails ("Pl. Feb. 2018 Emails"), ECF No. 31-4, Def. Ex. A-11 at 127–142.  One of Plaintiff's emails also lists three examiners' cases that were "allowed" prior to Mr. Hale's statement regarding application of negative caselaw to junior examiners.  *Id.* at 130.

Response to Rebuttal to Denial of Permanent Partial Signatory Authority ("Mr. Hafiz Resp."), ECF No. 31-4, Def. Ex. A-9 at 92.

Plaintiff notes that on March 28, 2018, Technology Center Director James Trammell ("Mr. Trammell")[8] "offered to allow Hale to report to Mamon Obeid if Hale would drop his EEO complaint against Hayes, which Hale declined to do." Pl. Addl. Stmt., ECF No. 35-1 at ¶ 9.

Defendant states that "Plaintiff lost his autocount privileges because he did not correct errors on work returned by Mr. Hayes, and instead let those cases sit." Def. Stmt., ECF No. 31-2  at ¶ 44.  Plaintiff disputes this fact and states that he "lost his autocount privileges because Mr. Hayes was returning an inordinate amount of office actions to him, thus artificially manipulating Plaintiff's Docket Management and Productivity scores." Pl. Stmt., ECF No. 35-1 at ¶ 44.

On April 9, 2018, Plaintiff filed a formal EEO complaint of discrimination with the OEEOD.   Def. Stmt., ECF No. 31-2 at ¶ 111.

From April 29, 2018, until July 2019, SPE Neha Patel ("Ms. Patel") was Mr. Hale's first-line supervisor.  *Id.* at ¶ 57.  Ms. Patel first learned of Plaintiff's OEEOD filing on May 8, 2018, the date she received a memorandum from the OEEOD.  *Id.*  The parties dispute the extent to which Mr. Hayes was involved in any discipline of Plaintiff after Ms. Patel became Mr. Hale's SPE.  *Id.* at ¶ 67; Pl. Stmt., ECF No. 35-1 at ¶ 67.  Plaintiff states that he "was told to submit his work to both Mr. Hayes and Ms. Patel concurrently." Pl. Addl. Stmt., ECF No. 35-1 at ¶ 12.  According to Plaintiff, "Ms. Patel and Mr. Hayes gave [him] contradictory instructions, thereby causing [plaintiff] to revise cases multiple times without

---

[8] Mr. Trammell was described as "Plaintiff's second-level supervisor".  Def. Stmt., ECF No. 31-2 at ¶ 84.

receiving credit for them." *Id.* at ¶ 13.  He states that "Ms. Patel instructed [him to] complete cases in such a manner that he would have to work overtime to do so, and then refused to grant [Plaintiff] overtime pay." *Id.* at ¶ 14.

Ms. Patel repeatedly informed Plaintiff about the requirement that he seek her approval before submitting paid time for hours spent on equal employment opportunity matters.  Def. Stmt., ECF No. 31-2 at ¶¶ 61–63.  Defendant states that "Plaintiff was never disciplined for taking non-examination time," and that the USPTO approved "all non-examination time Plaintiff claimed related to his EEO matters." *Id.* at ¶ 64.  Plaintiff denies this fact and cites evidence that Ms. Patel "removed EEO counseling time from [his] timesheet," resulting in Plaintiff "hav[ing] a lower Production metric."  Pl. Stmt., ECF No. 35-1 at ¶ 64; Affidavit of Timothy Hale ("Hale Affidavit"), ECF No. 35-3, Pl. Ex. 1 at ¶ 62; Patel's Feb. 19, 2019 Email, ECF No. 35-9, Pl. Ex. 7.

Plaintiff states that "[o]n or about June 7, 2018, Hale met with Terrell McKinnon to discuss docket Management issues" and McKinnon reviewed Plaintiff's docket and "could find no way for Hale to become compliant with Docket Management without working overtime."  Pl. Addl. Stmt., ECF No. 35-1 at ¶¶ 15–16.  Plaintiff only cites his own affidavit in support of this fact.

"In the third quarter of FY 2018, Plaintiff's score in the critical element of Production was 60% under the old count system, and 58% under the new count system."  Def. Stmt., ECF No. 31-2 at ¶ 68.  His score "in the critical element of Docket Management was -2%." *Id.* at ¶ 69.  Plaintiff states that these scores resulted from "the excessive number of returned office actions," not poor performance.  Pl. Stmt., ECF No. 35-1 at ¶¶ 68–69.

10

On June 26, 2018,[9] "Ms. Patel issued Plaintiff an oral warning" based on his scores.  Def. Stmt., ECF No. 31-2 at ¶ 70.  Defendant states that Ms. Patel warned Mr. Hale that if he failed to maintain a score of at least 88% in both critical elements between June 24, 2018 and October 13, 2018, the oral warning evaluation period, he would be subject to a written warning.  *Id.*  Plaintiff objects to this fact and states that he "did not receive the full set of instructions for the Oral Warning until September 28, 2018."  Pl. Stmt., ECF No. 35-1 at ¶ 70.

On July 2, 2018, Plaintiff "informed Ms. Patel that he intended to file a retaliation complaint against her."  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 19.

On July 10, 2018, "Ms. Patel issued Plaintiff a non-disciplinary Letter of Counseling,"  Def. Stmt., ECF No. 31-2 at ¶ 71.  Defendant states that Ms. Patel issued the letter because Plaintiff "ma[de] disparaging remarks about Mr. Hayes during a meeting with a patent applicant in violation of USPTO's Rules of the Road Policy."  *Id.*  Plaintiff denies making any such remarks.  Pl. Stmt., ECF No. 35-1 at ¶ 71.

On July 12, 2018, Plaintiff "filed a retaliation complaint with Randy Stephens, who had represented himself as working for the EEO office."  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 20.  According to Plaintiff, "Stephens did not work for the EEO office, but rather was performing an investigation of Hale on behalf of Patel."  *Id.* at ¶ 21.  Plaintiff states that "Stephens did not forward Hale's complaint to the EEO office for filing."  *Id.* at ¶ 22.

On August 22, 2018, Ms. Patel became aware of Plaintiff's Zen Buddhism religion because Plaintiff submitted a leave request referencing his attendance at religious events.  Def. Stmt., ECF No. 31-2 at ¶ 76.  The September 28, 2018 end date for Mr. Hale's

---

[9] Plaintiff states that warning was on June 29, 2018.  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 17.

warning period was extended to October 13, 2018, in order to accommodate his requested leave.  *Id.* at ¶ 77.[10]

On October 2, 2018, "Ms. Patel issued Plaintiff a Notice of Proposed Three (3) Day Suspension."  Def. Stmt., ECF No. 31-2 at ¶ 72.  Ms. Patel allegedly issued the suspension "because Plaintiff had ignored Ms. Patel's supervisory instructions on five separate occasions, and had made unprofessional and unnecessary comments to an outside party during a meeting that were disrespectful to the Agency and to Ms. Patel." *Id.*  Mr. Hale denies that underlying conduct.  Pl. Stmt., ECF No. 35-1 at ¶ 71; September 19 and 21, 2018 Emails re: Comments ("Sept. 2018 Comment Emails"), ECF No. 35-11, Pl. Ex. 9 at 2–4.  Plaintiff states that the notice includes reference to Hale speaking about his EEO complaint.  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 26.[11]

Technology Center Director Joseph Thomas ("Thomas") "made the decision to uphold the proposed three-day suspension."  Def. Stmt., ECF No. 31-2 at ¶ 73.[12]  He had no knowledge of Mr. Hale's religion, *id.* at 74, however, Plaintiff states Thomas reviewed an email exchange that referenced of the EEO complaint, thereby presumably making him aware of that complaint.  Pl. Stmt., ECF No. 35-1 at ¶ 74.

"During the oral warning evaluation period, Plaintiff's performance in the critical element of Production was 31%; and his performance in the critical element of Docket Management was 19%."  Def. Stmt., ECF No. 31-2 at ¶ 78.  Mr. Hale states that these

---

[10] Plaintiff states that "[o]n September 28, 2018 [he] became aware that he was not given the full set of instructions for the Oral Warning Period and asked Ms. Patel to restart it."  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 25.
[11] Plaintiff also states that the notice included "as specifications several other charges which were not disciplinable offenses, including referring applicants to Ms. Patel and informing applicants of their appeal rights."  *Id.* at ¶¶ 27–28.
[12] Thomas concluded that Patel's recommended suspension was "rational and fair."  *Id.* at ¶ 75.

scores resulted from "the excessive number of returned office actions," not poor performance.  Pl. Stmt., ECF No. 35-1 at ¶ 78.

On October 25, 2018, Ms. Patel issued Mr. Hale a "Written Warning of Unacceptable Performance" based on these scores.  October 2018 Written Warning of Unacceptable Performance ("Oct. 2018 Written Warning"), ECF No. 31-5, Def. Ex. B-8 at 82.  The letter warned Plaintiff that if he failed to maintain a score of at least 88% in both critical elements of Production and Docket Management between October 28, 2018[13] and February 2, 2019,[14] the written warning evaluation period, he "could be removed from Federal service."  *Id.* at 83.

On October 29, 2018, Mr. Hale states he expressed his intention to file a retaliation complaint against Patel.  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 30.  During the period of "informal resolution" for this complaint, Plaintiff requested that he be transferred, but "[Mr.] Trammell told the EEO counselor that there were no available positions for a transfer."  *Id.* at ¶¶ 31–32.  Mr. Hale states that "[a]round the same time, the USPTO was advertising for and hiring individuals with Hale's qualifications."  *Id.* at ¶ 33.  Plaintiff cites only his own testimony in support of this fact.

On October 29, 2018, when Mr. Hale realized that Stephens had failed to file the July retaliation complaint, Plaintiff filed it the with the OEEOD.  *Id.* at ¶ 34. He cites only his own testimony in support of the prior interaction with Stephens.

---

[13] Defendant's Statement of Facts notes that the period began October 29, 2018, Def. Stmt., ECF No. 31-2 at ¶ 79, but the written warning provides an onset date of October 28, 2018, for the evaluation period. Oct. 2018 Written Warning, ECF No. 31-5, Def. Ex. B-8 at 83.
[14] The USPTO extended the original end date of this warning period to March 2, 2019, in order "to accommodate Plaintiff's requested absence(s)."  Def. Stmt., ECF No. 31-2 at ¶ 80.

During the evaluation period with respect to his October 25, 2018 written warning, "Plaintiff's performance in the critical element of Production was 25%, and his performance in the critical element of Docket Management was -2.36%." Def. Stmt., ECF No. 31-2 at ¶ 81. Mr. Hale states that these scores resulted from "the excessive number of returned office actions," not poor performance. Pl. Stmt., ECF No. 35-1 at ¶ 81. During this period, "Ms. Patel met with Plaintiff on numerous occasions and was in constant communication with Plaintiff, via email, about his performance . . . ." Def. Stmt., ECF No. 31-2 at ¶ 82.

Defendant states that during the evaluation period, "Plaintiff did not post sufficient work in a timely manner to meet his goals." *Id.* at ¶ 83. Specifically, according to the USPTO, Plaintiff failed to sufficiently correct errors in his work. *Id.* Plaintiff denies this fact and states that he "continued to post completed work in a timely manner to try to meet [his] goals." Hale Aff., ECF No. 35-3, Pl. Ex. 1 at ¶ 64. He notes that Patel's "excessive returns," instructions regarding not using date ranges[15] and her denial of Plaintiff's overtime requests,[16] "frustrated" his efforts. *Id.* at ¶ 64. According to Mr. Hale, when he "attempted to correct whatever was identified as an error, . . . Ms. Patel continually 'moved the goalposts'" regarding her expectations. *Id.* at ¶ 65.

On November 2, 2018, Hale filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Pl. Addl. Stmt., ECF No. 35-1 at ¶ 35.

---

[15] In his Statement of Additional Facts, Plaintiff states that on "July 15, 2018, Ms. Patel instructed [him] not to include date ranges in Prior Art searches, even though the use of specific date ranges is important and failing to do so results in an overwhelming number of search results, thus rendering the search useless." Pl. Addl. Stmt., ECF No. 35-1 at ¶ 23.
[16] Plaintiff states that he requested overtime in order to "catch up" on his work. Hale Aff., ECF No. 35-3, Pl. Ex. 1 at ¶ 64.

"On November 12, 2018, Ms. Patel removed EEO counseling time from [Plaintiff's] timesheet, thus causing him to have a lower Production metric." *Id.* at ¶ 36.

On December 21, 2018, the OEEOD issued its final decision denying Mr. Hale's complaints of discrimination. Def. Stmt., ECF No. 31-2 at ¶ 111; Final Agency Decision ("Agency Decision"), ECF No. 31-11, Def. Ex. H at 12.

On January 29, 2019, Plaintiff appealed the OEEOD decision to the EEOC. Def. Stmt., ECF No. 31-2 at ¶ 112.[17]

On February 19, 2019, Ms. Patel removed claimed EEO time from Mr. Hale's time sheet because he failed to obtain pre-approval for such time, pursuant to USPTO policy. Patel's Feb. 19, 2019 Email, ECF No. 35-9, Pl. Ex. 7.

Mr. Hale states that "[o]n March 18, 2019, Ms. Patel approved [his] request for time off for a religious retreat from April 15, 2019 through April 26, 2019." Pl. Addl. Stmt., ECF No. 35-1 at ¶ 37.

In a notice dated April 9, 2019, Technology Center Director James Trammell "proposed Plaintiff's removal from Federal service." Def. Stmt., ECF No. 31-2 at ¶ 84; April 9, 2019 Notice of Proposed Removal ("Not. of Prop. Remov."), ECF No. 31-6, Def. Ex. C-1 at 8. Mr. Trammell based his decision[18] on Mr. Hale's "fail[ure] to attain an acceptable level of performance during the written warning period." Def. Stmt., ECF No. 31-2 at ¶ 85.[19] The parties dispute the extent to which Ms. Patel assisted Plaintiff in improving his performance. *Id.* at ¶¶ 90–91; Pl. Stmt., ECF No. 35-1 at ¶¶ 90–91.

---

[17] On August 19, 2020, the EEOC affirmed that decision. *Id.*

[18] He "considered all of the evidence contained in the Evidence File (Exh. C-2)," which consists of 507 pages of material. Def. Stmt., ECF No. 31-2 at ¶ 84; Evidence File ("Evid. File"), ECF No. 31-6, Def. Ex. C-2 at pp. 14–521.

[19] With respect to "Production, Plaintiff achieved 24% (under the prior count system) and 25% (under the new count system), far below the 88% requirement to perform at a Marginal level. Plaintiff did not achieve an 88% during even a single bi[-]week during the nine-week written warning evaluation period, with his

During the virtual meeting at which Mr. Trammell delivered the Notice of Proposed Removal, Mr. Hale "told Mr. Trammell that he was going on a 'religious vacation.'" Def. Stmt., ECF No. 31-2 at ¶ 93. Mr. Trammell told Plaintiff that the Notice contained instructions with respect to scheduling. *Id.* Plaintiff further states that Mr. Trammell informed him that any response to the Notice was due in fifteen days. Pl. Addl. Stmt., ECF No. 35-1 at ¶ 38.

On April 10, 2019, Mr. Trammell emailed Plaintiff concerning the process for seeking an extension of time to file his response to the Notice of Proposed Removal. Def. Stmt., ECF No. 31-2 at ¶ 94. Plaintiff subsequently requested and was granted an extension. *Id.* at ¶ 95.

Assistant Deputy Commissioner for Patents Irem (Remy) Yucel ("Ms. Yucel") made the final decision with respect to Plaintiff's removal. *Id.* at ¶ 96. Defendant states that Mr. Trammell, Ms. Patel and Mr. Hayes were not involved in the final decision to terminate his employment. *Id.* at ¶¶ 97–99. Mr. Hale, however, denies "any implication that [those individuals] had no input into the decision." Pl. Stmt., ECF No. 35-1 at ¶¶ 97–99. He

---

biweekly scores ranging from 45% to 0%." *Id.* at ¶ 87. With respect to "Docket Management, Plaintiff achieved a -2.36% score, far below the expected 88% to perform at a Marginal level as a patent examiner." *Id.* at ¶ 88. The Plaintiff admits that these are the scores he received but for his part again states that these scores resulted from "the excessive number of returned office actions," not poor performance. Pl. Stmt., ECF No. 35-1 at ¶ 87.

cites Mr. Trammell's,[20] Ms. Patel's,[21] and Mr. Hayes's[22] deposition testimony for the proposition that they provided information with respect to Plaintiff's removal.  *Id.*

Ms. Yucel "had no knowledge of, or interaction with, Mr. Hale prior to his proposed removal."  Def. Stmt., ECF No. 31-2 at ¶ 100.

Mr. Hale filed a written reply and, on June 27, 2019,[23] provided an oral reply to Ms. Yucel.  *Id.* at ¶¶ 100, 103.  The USPTO states that during his oral reply, Plaintiff failed to provide justification for his lack of performance and instead "used the oral reply time to air grievances about Ms. Patel and Mr. Hayes and the pending EEO investigation."  *Id.* at ¶ 104.  Mr. Hale objects to this statement and cites evidence that during his oral statement he cited past success as an examiner, and asked for additional time to submit additional documents.[24]  Pl. Stmt., ECF No. 35-1 at ¶ 104; Pl. Dep., ECF No. 35-4, Pl. Ex. 2 at Tr. 170:11–172:19.  He also cites Ms. Yucel's testimony during which she cited Mr. Hale's deficient performance and stated that he "did not explain or provide any nexus to anything that had happened to him that would impact his performance."  Pl. Stmt., ECF No. 35-1

---

[20] In response to a question regarding Plaintiff's removal, Mr. Trammell testified that it was his "responsibility to decide whether to issue a proposed removal."  Trammell Dep., ECF No. 35-12, Pl. Ex. 10 at Tr. 47:20-21.  Although he did not recall discussing the removal with anyone, Mr. Trammell testified that the USPTO process provided that he would have spoken to HR Specialist Twanda Plater.  *Id.* at Tr. 48:21-49:3.  Mr. Trammell further stated that he would review the information and "also would go OGL [sic] for their review, and then when everything is – looks correct, . . . the director then issues the letter.  *Id.* at Tr. 49:9-13.

[21] In response to a question regarding her input into the decision to remove Plaintiff, Ms. Patel stated "Yes. Office asked supervisor to provide that data."  Patel Dep., ECF No. 35-5, Pl. Ex. 3 at Tr. 146:3-4.  She stated that she provided the production and docket management scores.  *Id.* at Tr. p. 146:7.  Ms. Patel further stated that she "had a direct conversation about the examiner here, the examiner's performance number during the written warning period."  *Id.* at Tr. 147:5-7.  Although she stated that she did not recall specifics, she may have discussed it with the "HR, ER liaison, and supervisor."  *Id.* at Tr. 147:10-23.

[22] In response to a question regarding Plaintiff's October 2018 Warning, Mr. Hayes stated that his "role was just to make sure . . . all the documents that were required were there in the package."  Hayes Dep., ECF No. 35-6, Pl. Ex. 4 at Tr. 96:13–15.

[23] In Plaintiff's Statement of Additional Material Facts, he states that the date on which he submitted his written and oral responses was June 25, 2019.  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 39.

[24] Plaintiff testified that he did not submit these documents because of concerns over being disciplined and compromising the ongoing EEO complaint.  Pl. Stmt., ECF No. 35-1 at ¶ 104; Pl. Dep., ECF No. 35-4, Pl. Ex. 2 at Tr. 171:2-16.

at ¶ 104; Yucel Dep., ECF No. 35-13, Pl. Ex. 11 at Tr. 17:19–18:19.  In further describing

the lack of "nexus," Ms. Yucel testified that Plaintiff was "angered by the scheduling" and

"made some allegations, but said he could not provide evidence . . . because there was

an ongoing investigation of some sort."  *Id.* at Tr. 19:10-22.  Ms. Yucel noted that the

meeting was "very brief," and acknowledged Plaintiff's mention of his discrimination

allegations and the investigation.  *Id.* at Tr. 19:22-20:10.  Mr. Hale notes that Ms. Yucel

"refused to stay the removal until the conclusion of the pending EEO investigation so that

Hale could submit relevant documents that were being used in the investigation."  Pl.

Addl. Stmt., ECF No. 35-1 at ¶ 40.

On July 25, 2019, Ms. Yucel issued the final decision to remove Mr. Hale as a

USPTO examiner.  Def. Stmt., ECF No. 31-2 at ¶ 106.  The USPTO states that Ms. Yucel

"determined that the reasons presented in the April 9, 2019 Notice of Removal (Exh. C-

1) were fully supported and warranted adverse action pursuant to 5 U.S.C. § 4303."  *Id.*

at ¶ 105.  Plaintiff objects to this fact and states that "[Ms.] Yucel's decision was based

solely on Plaintiff's artificially manipulated Production and Docket Management scores."

Pl. Stmt., ECF No. 35-1 at ¶ 105.

Mr. Hale states that from July 27, 2019, through August 4, 2019, he contacted

Human Resources multiple times to request a copy of his docket, but never received it.

Pl. Addl. Stmt., ECF No. 35-1 at ¶¶ 41, 44.

Plaintiff states that "[o]n August 21, 2019, the USPTO denied [his] application to

reinstate his license as a patent agent, claiming that paperwork that [he] had filed on his

first day of employment in 2012 was not in the USPTO's files."  *Id.* ¶ 42.  Mr. Hale notes

that it was not until September 26, 2019, that the USPTO reinstated his license.  *Id.* ¶ 43.

Defendant maintains that Mr. Hale has failed to mitigate damages in that for two years after his removal, he did not seek employment as a patent attorney.  Def. Stmt., ECF No. 31-2 at ¶ 107.  Plaintiff states that he "was precluded from working as a patent attorney until two years after his termination by 37 C.F.R. Section 11."[25]  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 45.  He notes that this is because the USPTO did not provide him with a copy of his docket.  *Id.*

Mr. Hale has maintained his license to practice law, Def. Stmt., ECF No. 31-2 at ¶ 108, but the parties dispute the number of positions to which he has applied.[26]  Mr. Hale notes that an illness in February 2021 prevented him from pursuing employment for "several months."  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 50.  He states that he after the two-year period expired, he "sought and obtained employment as a patent attorney."  *Id.* at ¶ 51.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists."  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citations omitted).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual

---

[25] Plaintiff further states that "[v]iolating this provision would subject Hale to discipline, up to and including suspension or revocation of his registration to appear before the USPTO," Pl. Addl. Stmt., ECF No. 35-1 at ¶ 46, as well as "reciprocal discipline from the New York State Bar."  *Id.* at ¶ 47.

[26] Defendant states that Plaintiff applied to ten positions.  Def. Stmt., ECF No. 31-2 at ¶110.  Plaintiff clarifies that he pursued jobs during the two-year period after his removal, but "not as a patent attorney."  Pl. Addl. Stmt., ECF No. 35-1 at ¶ 48.  He also sought non-legal positions.  *Id.* at ¶ 49.

inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*  The court must disregard all evidence favorable to the moving party that the jury is not required to believe.  *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).  "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."  *Id.* (citing Fed. R. Civ. P. 56(e) Advisory Committee Note (1963)).

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  "[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'"  *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986)).  Instead, the party opposing summary judgment must set forth in their response "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 243.  "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted."  *Brown*, 654 F.3d at 358 (internal quotation marks omitted).

At the summary judgment stage, the judge's function is "not to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue" of material fact for trial.  *Anderson.*, 477 U.S. at 249.  The substantive law will identify which facts are material, and only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment.  *Id.* at 248.

20

III.    **DISCUSSION**

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).  When the plaintiff relies on circumstantial evidence, the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs the court's analysis.  *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (noting that the framework allows employees to have their "day in court despite the unavailability of direct evidence") (citation omitted).   "At the first stage, the plaintiff bears the burden of establishing a 'prima facie' case."  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)).  If Plaintiff satisfies the "minimal," *id.* (quoting " *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993)), requirements of his prima facie case, he is entitled to "'a presumption that the employer unlawfully discriminated against [him].'"  *Id.* (quoting *Burdine,* 450 U.S. at 253).

After the plaintiff satisfies his burden of establishing a prima facie case, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's dismissal."  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (citing *McDonnell Douglas,* 411 U.S. at 802); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant provides "such a reason . . ., the plaintiff can no longer rely on the prima facie case, but may still prevail if [he or] she can show that the . . . determination was in fact the result of discrimination."  *Gorzynski*, 596 F.3d 93, 106  (citation omitted).  The final burden-shift

falls on the plaintiff to show "that the proffered reason is a pretext for discrimination." *Cutler v. Stop & Shop Supermarket Co., LLC*, 856 F. Supp. 2d 416, 419 (D. Conn. 2012) (citing *Vivenzio,* 611 F.3d at 106), *aff'd sub nom.,* 513 F. App'x 81 (2d Cir. 2013). The plaintiff must prove that the true reason for her termination was unlawful discrimination. *Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 148 (2000); *Viola v. Philips Medical Sys. of N. Am.*, 42 F.3d 712, 717 (2d Cir. 1994).

The Second Circuit has recognized that "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). "Even in the discrimination context, . . . , a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

The USPTO argues that Mr. Hale's claims for religious accommodation and discrimination, and for retaliation based on that discriminatory treatment, must fail because Plaintiff has presented insufficient facts and evidence to create a genuine issue of material fact for trial. Def.'s Memorandum ("Def. Mem."), ECF No. 31-1 at 7. Defendant cites "Plaintiff's copiously documented poor performance." *Id.*

    a)    <u>Failure to Accommodate Claim</u>

With respect to a failure to accommodate claim, in "mak[ing] out a *prima facie* case of religious discrimination, [Plaintiff] must show (1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employers of this

belief; and (3) [he was] disciplined[27] for failure to comply with the conflicting employment requirement."  *Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001).  "Employers are required to reasonably accommodate an employee's religion unless doing so would constitute an undue hardship."  *Id.* (citing 42 U.S.C. § 2000(e)(j); *Philbrook v. Ansonia Bd. of Educ.,* 757 F.2d 476, 481 (2d Cir. 1985)).

The USPTO argues that Mr. Hale fails to state a prima facie case because it granted his requests for religious, compensatory time, when he made them in compliance with USPTO policy, and did not discipline Mr. Hale for using such time.  Def. Mem, ECF No. 31-1 at 7–9.  The USPTO also notes that it and granted extensions of any deadlines "impacted by" his religious, compensatory time off.  *Id.* at 8–9.  Mr. Hale argues in opposition that the USPTO only permitted him to file an appeal, not a rebuttal.  Pl.'s Opposition ("Pl. Opp."), ECF No. 35 at 12.[28]  According to Mr. Hale, "[a] rebuttal is a key step in the grant of PSA that allows a patent examiner a pre-decision opportunity to address the supposed deficiencies in his performance . . . ."[29]  *Id.*  He maintains that "[t]he USPTO's choice to make the decision early, while knowing that [he] was on a religious retreat, constitutes a failure to accommodate his religious beliefs."  *Id.* at 13.  The USPTO replies that Mr. Hale fails to create an issue of fact for trial, and that Mr. Hale's reliance

---

[27] The Second Circuit has not specifically "defined 'discipline' within the context of the three-pronged religious discrimination test." *Lewis v. N.Y. City Transit Auth.*, 12 F. Supp. 3d 418, 443 (E.D.N.Y. 2014) (quoting *Siddiqi v. N.Y. City Health & Hosp. Corp.*, 572 F. Supp. 2d 353, 370 (S.D.N.Y. 2008) (citations omitted)).  Courts in this circuit have, however, "'equated with the requirement of an adverse employment action' under the *McDonnell Douglas* framework." *Id.* 12 (quoting *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 695 (S.D.N.Y. 2011)); *see, e.g., Marmulszteyn v. Napolitano*, 523 F. App'x. 13, 14 (2d Cir. 2013) (summary order) (holding that Plaintiff "failed to establish a *prima facie* case for his failure-to-accommodate claim because no evidence suggests that he suffered an adverse employment action.").

[28] Plaintiff's opposition only makes reference to the denial of PSA, in support of his failure to accommodate claim. *Id.*  Therefore, the court concludes that it is the only event on which he bases this claim.

[29] He notes a rebuttal "can result in a 'Rebuttal Review Meeting' that includes not only the decision-maker, but also the reviewing examiners and the examiner's SPE."  *Id.*

on "speculation," "conjecture," and "conclusory allegations" is insufficient to cure this fatal defect.  Def.'s Reply ("Def. Reply"), ECF No. 38 at 3 (quoting *Hicks*, 593 F.3d at 166).

In support of his failure to accommodate claim, Mr. Hale identifies only Defendant's failure to permit him to file a rebuttal, prior to the PSA denial.  Pl. Opp., ECF No. 35 at 12–13.  The parties do not dispute that Mr. Hale is a Zen Buddhist.  Def. Stmt., ECF No. 31-2 at ¶ 17.  Further, they do not dispute that he informed Defendant of his beliefs when he requested compensatory, religious time off and, subsequently, when he filed his January 2018 OEEOD complaint.  *Id.* at ¶¶ 18, 21, 56.  Therefore, the issues to be addressed are whether Mr. Hale's religious beliefs "conflict[ed] with an employment requirement," and whether Defendant "disciplined [him] for failure to comply" with that work requirement.  *Knight*, 275 F.3d at 167.

The due date for Mr. Hale's rebuttal, and the timing of the USPTO's December 14, 2017 decision denying PSA status, fell during Plaintiff's November 27, 2017–December 15, 2017 religious retreat.  Pl. Stmt., ECF No. 35-1 at ¶ 18.  However, Plaintiff does not dispute that he subsequently filed an appeal of that decision on February 21, 2018.  Pl. Stmt., ECF No. 35-1 at ¶ 37.  Plaintiff contends that material issues of fact exist with respect to whether he was prejudiced by his failure to file a rebuttal, as opposed to an appeal after the decision.  He relies on his own conclusory statement that "[a] rebuttal is a key step in the grant of PSA" because it takes place prior to the decision and not, like an appeal, after the denial.  Pl. Opp., ECF No. 35 at 12.  He also cites a USPTO policy provision that "[a] rebuttal review meeting may be convened, which may include the Director, SPE, QAS and/or reviewers."  July 2017 Signatory Programs Policy ("2017 Sig. Prog. Pol."), ECF No. 31-4, Def. Ex. A-5 at 59.

Plaintiff has provided no evidence, other than his own opinions, to support the conclusion that he was prejudiced by filing an appeal, rather than a rebuttal.  For example, he provides no testimony on the topic, aside from his own, nor statistics regarding a comparison of the effect of filing a rebuttal versus an appeal.  With respect to a rebuttal review meeting, Plaintiff fails to provide evidence regarding how frequently the USPTO schedules these meetings, as they appear from the policy statement to be optional.  *Id.* Plaintiff also fails to state how his rebuttal in opposition to the November 27, 2017 errors would have differed from the arguments set forth in his appeal of the December 14, 2017 decision denying PSA.   His "conclusory allegations" do not sufficiently "resist [Defendant's] motion for summary judgment."  *Holcomb*, 521 F.3d at 138.  Mr. Hale has failed to provide evidence that his "religious belief conflict[ed] with an employment requirement," and that Defendant "disciplined [him] for failure to comply with the conflicting employment requirement."  *Knight*, 275 F.3d 156, 167.  Plaintiff has not stated a prima facie case and, therefore, Defendant's motion for summary judgment hereby is **<u>GRANTED</u>** with respect to Plaintiff's failure to accommodate claim.

      b)   <u>Religious Based Discrimination</u>

          i.  *Prima Facie Case*

In order to establish a prima facie case of discrimination, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination."  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010) (citing *Holcomb*, 521 F.3d at 138).   The parties

dispute only whether Plaintiff has presented sufficient evidence to support the requisite "inference of discrimination." *Id.*

The USPTO "presumes, for purposes of summary judgment only," and Plaintiff does not dispute,[30] that the following events constitute adverse employment actions: (1) the PSA denial; (2) Plaintiff's loss of Autocount privileges; (3) the Oral Warning; (4) the Written Warning; and (5) Plaintiff's Termination.  Def. Mem, ECF No. 31-1 at 11. Defendant notes that no decisionmaker, with respect to the PSA denial and termination, had personal knowledge of Plaintiff's religion, Plaintiff does not rely on any negative statements or derogatory remarks about his religion, and Defendant did not deny Plaintiff religious, compensatory time off, nor discipline him for the use of such time.  *Id.*[31]  Mr. Hale argues in opposition that the USPTO "considered [him] an exemplary employee until shortly after he revealed his religion to . . ., Hayes, at which point he suddenly began to receive an inordinate number of returned Office Actions."  Pl. Opp., ECF No. 35 at 14.[32] Specifically, he states that Ms. Patel and Mr. Hayes "artificially manipulat[ed] [his] workload[,]" *id.*, in order to "negatively affect[] his Production and Docket Management scores, which then were relied upon by the USPTO to discipline and ultimately terminate

---

[30] Mr. Hale appears to concede that this is the conduct on which his claims are based and does not argue that allegations concerning supervisor oversight, or other action, rise to the level of an adverse employment action in the context of this claim.  Def. Mem., ECF No. 31-1 at 10; Pl. Opp., ECF No. 35 at 14-15.  As the USPTO notes, "criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action."  *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011).

[31] To the extent Plaintiff claims to have been treated less favorably than other employees outside of his protected class, Defendant notes he has not identified sufficient evidence of a comparator.  *Id.* at 12. Plaintiff responds, however, that he does not rely on allegations that other employees were treated more favorably, but instead on evidence that "that religious discrimination was a motivating factor in his discipline and termination."  Pl. Opp., ECF No. 35 at 14.

[32] He avers that this increase means "either Mr. Hayes was not doing his job managing Hale prior to Fiscal Year 2018; Hale's performance suddenly and inexplicably went from excellent to abysmal; or Mr. Hayes began to discriminate against Hale."  *Id.* at 16 n.1.  He notes that "the [c]ourt must draw all reasonable inferences in [his] favor, [and]. . . must accept that Mr. Hayes started to discriminate against [Plaintiff]."  *Id.* at 16.

[Plaintiff]."  *Id.*  Defendant replies that Plaintiff does not have "*personal knowledge* of the facts" to which he attests, Def. Reply, ECF No. 38 at 2 (emphasis in original), and the court should not disregard its "objective metrics . . . in favor of [Plaintiff's] self-serving, conspiratorial speculation."  *Id.* at 30.

"No one particular type of proof is required to show that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination."  *Ofoedu v. St. Francis Hosp. & Med. Ctr.*, No. 04CV1707 (PCD), 2006 WL 2642415, at \*14 (D. Conn. Sept. 13, 2006).  The Second Circuit has recognized that circumstances on which the court may base such an inference include, inter alia, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge; or the timing of the discharge."  *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994) (internal citations omitted); *see also Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2d Cir. 2001).

Plaintiff relies on the sequence of events and temporal quality of Defendant's conduct, in relation to his requests for religious leave.  Pl. Opp., ECF No. 35 at 15.  He cites his positive performance during the first six years of his employment at the USPTO,[33] and the fact that after he requested leave for religious reasons in September 2017 and took such leave from November 27, 2017 through December 15, 2017, Defendant began, in January 2018, to return "an inordinate number" of office actions, leading ultimately to his termination.  Pl. Opp., ECF No. 35 at 14.  Although it is a close question, the court

---

[33] Pl. Stmt. Addl. Facts, ECF No. 35-2 at ¶¶ 1–2.

concludes that the sequence events is sufficient to satisfy "the minimal requirements," *St. Mary's Honor Ctr.,* 509 U.S. at 506, of this initial step of the burden shifting analysis with respect to all but one of the alleged adverse actions.  *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (recognizing that the lack of specifically-delineated requirements regarding temporal proximity "has allowed [the United States Court of Appeals for the Second Circuit] to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.").

The December 14, 2017 PSA denial took place while Mr. Hale was away on his religious retreat.  Def. Stmt., ECF No. 31-2 at ¶ 28.  Although Hayes became aware of Mr. Hale's religion in September 2017, and granted his request for leave, Plaintiff was in the process of PSA review and there is some question regarding Hayes's involvement in the December decision.  Pl. Stmt., ECF No. 35-1 at ¶ 30.  The subsequent March 19, 2018 decision upholding that denial, was farther removed from Hayes's knowledge of Mr. Hale's religion, but Mr. Hale was afforded time to file his appeal.  Around that time, the USPTO, while Hayes was Plaintiff's supervisor, denied Mr. Hale's Autocount privileges.  The court concludes that with respect to the USPTO's denial of Mr. Hale's PSA and Autocount privileges, the sequence of these events is sufficient, in light of the surrounding circumstances, to support Plaintiff's prima facie case of discrimination.

With respect to Ms. Patel's June 26, 2018 Oral Warning, Mr. Hale admits that Ms. Patel did not become aware of his religion until August 22, 2018.  Def. Stmt., ECF No. 31-2 at ¶ 76.  Therefore, the sequence of events does not support Plaintiff's discrimination claim with respect to this alleged adverse action.  However, Ms. Patel issued the Written Warning on October 25, 2018, approximately two months after learning of Mr. Hale's

religion.   Oct. 2018 Written Warning, ECF No. 31-5, Def. Ex. B-8 at 82.   The court concludes that the temporal proximity of Patel's knowledge and her written warning, in light of the fact that the oral warning period was extended, is sufficient to support Plaintiff's prima facie case with respect to that adverse action.

Finally, with respect to his termination, Mr. Hale has cited Mr. Hayes's, Ms. Patel's, and Mr. Trammell's testimony in support of his statement that they were involved in that decision.   Pl. Stmt., ECF No. 35-1 at ¶¶ 97–99.   Mr. Trammell became aware of Mr. Hale's religion on April 9, 2019, Def. Stmt., ECF No. 31-2 at ¶ 93, and the USPTO issued the decision to terminate Mr. Hale on June 25, 2019, *id.* at ¶ 106, after affording him extension of time to submit his rebuttal and oral statement.   There is some question whether the temporal proximity of these events is sufficient, however, in light of the continuing nature of the proceedings and additional time the USPTO granted Plaintiff to file his response, the court concludes that the sequence of events supports Mr. Hale's prima facie case and an inference of religious discrimination.

### ii. *Non-Discriminatory Reason*

As Mr. Hale has stated a prima facie case of religious discrimination, the burden shifts to the USPTO to articulate a non-discriminatory basis for its actions.   *Vivenzio*, 611 F.3d at 106.   Defendant again cites Plaintiff's documented performance deficiencies.   The court concludes that Defendant has satisfied its burden and, therefore, Plaintiff must "adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation."   *Id.* (citation omitted).

### iii. *Pretext*

In support of the existence of pretext, and in addition to the timing of the adverse actions at issue, Plaintiff states that Mr. Hayes "began to look more closely at Hale's work."  Pl. Opp., ECF No. 35 at 16.  He further notes that the returns resulted in additional work, and caused his scores in production and docket management "to plummet," resulting in further negative reviews and, ultimately, in his termination.  *Id.*  Although Plaintiff acknowledges and agrees to the USPTO's stated criteria for review of an examiner's performance, he maintains that such criteria was "far from objective," *id.* at 17, and that his supervisors used the system to "artificially manipulat[e] [his] workload." *Id.* at 16.  Unfortunately, this theory entirely relies on Plaintiff's "speculation or conjecture" and "conclusory allegations."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  Plaintiff does not cite any source for this theory, other than his own affidavit[34] and testimony. Additionally, in support of Plaintiff's claim that Mr. Hayes more closely reviewed his work upon learning of Plaintiff's religion, Plaintiff only relies on deposition testimony in which Mr. Hayes said that after November 2017, Plaintiff "had failed the [PSA Program,] and I felt it was necessary to work with him to try to improve his work so that he would be successful the next time."  Hayes Dep., ECF No. 35-6, Pl. Ex. 4 at Tr. 77:11–17.

Although the temporal quality of the events is a relevant consideration,[35] here, that timing, coupled only with Plaintiff's assumptions, is insufficient to state the requisite "inference of discrimination."  *Holcomb*, 521 F.3d at 138.

---

[34] "On summary judgment, '[a] supporting or opposing affidavit must be made on personal knowledge.'" *Hicks*, 593 F.3d at 167 (quoting Fed. R. Civ. P. 56(e)(1)).

[35] *Chambers*, 43 F.3d at 37 (2d Cir. 1994).  In *Chambers*, in addition to timing of the underlying decisions and Plaintiff's statements, Plaintiff presented evidence regarding Defendant's efforts to fill Plaintiff's position with candidates with his qualifications.  *Id.* at 38.  Further, the court noted that the case presented "questions and inconsistencies . . . as to the reason for [Plaintiff's] discharge."  *Id.*  To the contrary, in this case,

Plaintiff does not submit statistical, corroborative or other evidence to support a specific indication of religious bias.  For example, Plaintiff does not cite evidence that the errors listed in the increased returns of his work were not cited a basis for errors in his work prior to his request for religious leave.[36]  There is no evidence that any of Plaintiff's supervisors, or those responsible for his discipline and/or termination, held animus against those of the Zen Buddhist faith.  To the contrary, the USPTO never denied his requests for compensatory, religious leave.[37]  Nor is there any other evidence suggesting that Defendant failed to follow its prescribed policies and procedures.  *See Rodriguez v. Wal-Mart Stores East, Limited* Partnership, 3:20-cv-371 (MPS), 2022 WL 844713, at *9–10 (D. Conn. Mar. 22, 2022) (recognizing that although allegations regarding promotion of male employee to Plaintiff's position sufficiently stated a prima facie case, Plaintiff failed to present sufficient evidence of pretext, noting, inter alia, a lack of evidence showing Defendant "did not comply with its Disciplinary Action Policy").  Rather, Plaintiff relies on his own conclusions and conjecture to support proof of pretext.  *See Abdul-Hakeem v. Parkinson*, Civil No. 3:10-cv-47 (JBA), 2012 WL 234003, at *5 (D. Conn. Jan. 25, 2012) (concluding that Plaintiff failed to provide evidence of similarly situated comparators and produced no other evidence of race-based animus; her reliance "entirely on surmise and conjecture as to Defendants' motivations, [was] insufficient to survive summary judgment."), *aff'd*, 523 F. App'x 19 (2d Cir. 2013); *St. Juste v. Metro Plus Health Plan*, 8

---

Defendant submits evidence of a consistent decline in Plaintiff's performance and its undisputed adherence to internal policies and procedures.

[36] Although one of the emails for which he was issued a letter of counseling lists three examiners' cases that were "allowed," ECF No. 31-4, Def. Ex. A-11 at 130, Plaintiff provides no evidence of specific errors in those approved cases that Mr. Hale's SPE cited as a basis for any of Plaintiff's returns.

[37] The only denial cited, was granted after Plaintiff submitted a corrected request. *See supra* note 4.

F. Supp. 3d 287, 314 (E.D.N.Y. Mar. 28, 2014) (concluding that Plaintiff's reliance on speculation was insufficient to show pretext).

The court concludes that while Mr. Hale presented a prima facie case of discrimination under the *McDonnell Douglas* burden shifting framework, he has failed to rebut the USPTO's legitimate, non-retaliatory reasons for its adverse employment action. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's discrimination claim hereby is **GRANTED.**

c)      Title VII – Retaliation

Title VII makes it unlawful "for an employer to discriminate against any . . . employee[ ] . . . because [that employee] opposed any practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a)." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019) (internal quotations omitted).  Similar to discrimination claims, retaliation claims are analyzed under the aforementioned burden-shifting framework set forth in *McDonnell Douglas*, 411 U.S. at 802–05  Step one of the framework requires a plaintiff to establish a prima facie case "by showing (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Lenzi*, 944 F.3d at 112 (citing *Hicks*, 593 F.3d at 164).  The plaintiff's burden in this regard is "de minimis," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.*

If the plaintiff meets the initial burden of showing a prima facie case of retaliation, "a presumption of retaliation arises," and the defendant must then "articulate a legitimate,

non-retaliatory reason for the adverse employment action." *Id.* "The defendant's burden also is light." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). "The employer need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Id.* (emphasis in original). "The burden is one of production, not persuasion." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). The burden then shifts back to the plaintiff to "demonstrate by competent evidence" that the reasons offered were "a pretext for discrimination." *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 255 n.10 (1981). Plaintiff must "show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348–49, 360 (2013)).

The court concludes that while Mr. Hale presented a prima facie case of retaliation under the *McDonnell Douglas* burden-shifting framework, he has failed to rebut the USPTO's legitimate, non-retaliatory reasons for its adverse employment actions. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's retaliation claim hereby is **GRANTED.**

        i. *Prima Facie Case*

The parties dispute only whether Mr. Hale has presented sufficient evidence to support the causation requirement of his prima facie case of retaliation. Defendant notes that the PSA denial occurred prior to Plaintiff's first EEO complaint, and the subsequent decision affirming the denial "was made by Mr. Hafiz, an individual with no knowledge of Plaintiff's religion or EEO activity." Def. Mem., ECF No. 31-1 at 23, 25. With respect to

33

the remaining adverse employment actions,[38] Defendant avers, similar to its argument in the context of the discrimination claim, that Plaintiff "cannot refute the metrics," serving as the basis for those actions. *Id.* On the issue of the temporal proximity, Defendant notes that the adverse actions were not sufficiently close in time to Plaintiff's EEO complaint. *Id.* at 26.

Mr. Hale states that "almost immediately" upon learning of his EEO complaint, his supervisors began to return "excessive" numbers of office actions which had an adverse effect on his productivity and docket management scores and, ultimately, resulted in the adverse employment actions at issue. Pl. Opp., ECF No. 35 at 19–20.[39] Plaintiff also states that Defendant refused to allow him to use EEO time, threatened discipline for use of such time, required that he submit work to two SPEs who gave him "conflicting instructions," forbid his use of date ranges in prior art searches and mention of his EEO complaint to applicants, and refused to permit Plaintiff to submit EEO documents prior to his termination. *Id.*

There is no doubt that Mr. Hale engaged in protected activity under Title VII. Protected activity includes "any activity designed 'to resist or antagonize . . .; to contend against; to confront; . . . [or] withstand' discrimination prohibited by Title VII[.]" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 317 (2d Cir. 2015) (citing *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271, 276 (2009)). It is undisputed

---

[38] Defendant notes that "Plaintiff's protected activity is . . . limited to his EEO complaints and participation in the EEO investigation process." *Id.* Plaintiff does not offer arguments in opposition to this statement, and avers that "there is no question that filing EEO complaints alleging violations of Title VII is protected activity." Pl. Opp., ECF No. 35 at 18.

[39] To the extent Plaintiff makes passing reference to returned office actions as "retaliatory actions," he has failed to sufficiently state how the returns independently rise to the level of adverse employment actions for purposes of his retaliation claim. *See Tepperwien*, 663 F.3d at 570 ("criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action.").

that Plaintiff engaged in protected activity by initiating an EEO action on January 4, 2018,

filing a formal EEO complaint on April 4, 2018, filing an EEO complaint on October 29,

2018, and filing an EEOC complaint on November 2, 2018.

"[T]emporal proximity of events may give rise to an inference of retaliation for the

purposes of establishing a prima facie case of retaliation under Title VII . . . ." *El Sayed*

*v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010); *but see Aida Gonzalez v. NYU*

*Langone Hospitals*, No. 21-2569, 2022 WL 4372199, at *2 (2d Cir. Sept. 22, 2022) (noting

Plaintiff failed to establish prima facie case of retaliation based on temporal proximity

where "her termination was preceded by 'gradual adverse job actions [that] began well

before [Plaintiff] had ever engaged in any protected activity.'") (quoting *Slattery v. Swiss*

*Reinsurance America Corp.*, 248 F.3d 87, 95 (2001)).

Initially, the court notes that the USPTO's November 2017 letter, outlining errors

in Plaintiff's cases submitted in support of his PSA, and the December 2017 denial of

PSA, preceded Plaintiff's January 2018 EEO complaint.  However, the USPTO made its

final decision affirming the denial of PSA on March 19, 2018.  Further, the parties do not

dispute that Plaintiff's loss of Autocount[40] privileges occurred in March.  The temporal

proximity of these adverse actions in relation to Plaintiff's January 2018 EEO complaint,

is sufficiently close in time to support causation at the prima facie stage of Plaintiff's

retaliation claim.  *Id.*; *see also Kwan*, 737 F.3d at 845 (noting that three weeks was

"sufficiently short to make a prima facie showing of causation indirectly through temporal

proximity" and citing an earlier decision that recognized five months was sufficient) (citing

*Gorzynski,* 596 F.3d at 110).  Further, Ms. Patel's June 26, 2018 Oral Warning was

---

[40] Defendant notes that Plaintiff lost Autocount "shortly after his PSA denial."  Def. Mem., ECF No. 31-1 at
16.

sufficiently close to her May 8, 2018 awareness of Mr. Hale's April 9, 2018 formal EEO filing. The October 25, 2018 Written Warning and June 25, 2019 final termination, while unquestionably farther removed, were related to and flowed from the earlier Oral Warning for purposes of temporal proximity and Plaintiff's prima facie showing of causation.

### ii. *Non-Discriminatory Reason*

As Mr. Hale has stated a prima facie case of unlawful retaliation, the burden shifts to the USPTO to articulate a non-discriminatory basis for its actions. Defendant again cites Plaintiff's documented performance deficiencies. The court concludes that this explanation satisfies Defendant's burden. *Reeves*, 530 U.S. 133, 142 (2000).

### iii. *Pretext*

As a result of the USPTO's production of a non-discriminatory reason for its action, Mr. Hale must "show that retaliation was a 'but-for' cause of the adverse action . . . ." *Kwan*, 737 F.3d at 845 (citing *Nassar*, 570 U.S. at 348–49, 360). "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 846. While "temporal proximity" may support an inference of retaliation at the prima facie case stage, "without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext." *El Sayed*, 627 F.3d at 933. The Second Circuit has recognized that "[a] plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Id.* Plaintiff has failed to provide any such evidence.

Plaintiff cannot prove that unlawful retaliation was a "but-for cause," *id.* at 845, of the adverse employment actions at issue, based only on timing and his own conclusory statements. In support of his theory that Defendant's non-discriminatory reason is a pretext for retaliation, and in addition to the aforementioned temporal proximity, Plaintiff makes reference to certain alleged acts that he avers provide a basis for the requisite causation. The court will address each one seriatim.

With respect to Defendant's denial of EEO time and threats, Plaintiff cites only his own testimony and Ms. Patel's February 19, 2019 email, denying EEO time on one occasion. Pl. Opp., ECF No. 35 at 20; Patel's Feb. 19, 2019 Email, ECF No. 35-9, Pl. Ex. 7. In the email, however, Ms. Patel denies the leave request because it was time that required preapproval and, despite notifying Plaintiff of this requirement on multiple occasions, he failed to obtain such approval. Plaintiff provides no evidence to dispute the statement that he failed to obtain preapproval and admits that he knew it was required. Pl. Stmt., ECF No. 35-1 at ¶¶ 58, 59. The email does not contain any threats.

Plaintiff cites only his own testimony in support of the statement that he was required to submit his work to two SPEs, who gave conflicting instructions. With respect to Ms. Patel forbidding him from use of "date ranges," he cites his own testimony and Mr. Hayes's deposition. Pl. Opp., ECF No. 35 at 20; Hayes Dep., ECF No. 35-6, Pl. Ex. 4 at Tr. p. 56:15–57:1. In the latter, Mr. Hayes states only that an examiner should use a date range in a search for prior art. With respect to Plaintiff's statement that Ms. Patel forbid him from "from mentioning his EEO complaint to applicants," he again cites only his own testimony.[41]

---

[41] Although he also cites Mr. Hayes's deposition for this proposition, the reference appears to be a scrivener's error as the cited testimony only discusses the use of date ranges in searches for prior art.

Plaintiff's final argument regarding Defendant's failure to permit him to file EEO documents in opposition to (and prior to) his removal also is unavailing.  Specifically, he fails to state or cite any evidence regarding specifically what information such documents contained and how they would have supported his arguments in opposition to removal.[42]

Defendant consistently adhered to its policies and procedures throughout the relevant period.  Despite his own theory of why his previously strong performance suffered, Mr. Hale fails to provide sufficient evidence in support of his argument that retaliation was a "but for" reason for his termination, rather than his undisputed failing performance.  As the Second Circuit has recognized, "Title VII is not an invitation for courts to 'sit as a super-personnel department that reexamines' employers' judgments, *Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 169 (2d Cir. 2014) (per curiam) (quoting *Scaria v. Rubin,* 117 F.3d 652, 655 (2d Cir. 1997))."  *Ya-Chen Chen*, 805 F.3d at 73 (2d Cir. 2015); *see Timothy Hale v. Andrei Iancu, Dir. of the U.S. Pat. & Trademark Off.,* No. 3:19-CV-1963 (VLB), 2021 WL 9405460, at *10 (D. Conn. Feb. 23, 2021) (noting, at an earlier stage of this case, that "[i]t is not the role of courts to apply an employer's performance metrics and evaluate its employment decisions.") (citing *Scaria,* 117 F.3d at 655).  Plaintiff "cannot create a triable issue of fact merely by stating in an affidavit the very proposition [he is] trying to prove."  *Hicks*, 593 F.3d at 167 (citing *Fletcher,* 68 F.3d at 1456 (2d Cir. 1995) (recognizing that "conclusory allegations ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." (internal

---

Hayes Dep., ECF No. 35-6, Pl. Ex. 4 at Tr. 56:15–57:1.

[42] The court further notes that in his statement of fact, Plaintiff avers that "[a]round [October 29, 2018], the USPTO was advertising for and hiring individuals with Hale's qualifications."  Pl. Stmt., ECF No. 35-1 at ¶ 33.  In addition to the fact that this was approximately eight months prior to his termination, he cites only his own testimony in support of this fact.

quotation marks omitted)).[43]  Beyond his own conclusory allegations, Mr. Hale has not satisfied his burden to "demonstrate by competent evidence" that the reasons offered by the USPTO for his discharge merely were "a pretext for discrimination."  *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 255, n. 10 (1981).  Accordingly, Defendant's motion for summary judgment as to the retaliation claim hereby is **GRANTED.**

## IV. CONCLUSION

The USPTO's summary judgment motion, ECF No. 31, is **GRANTED.**  The clerk hereby is directed to render judgment in favor of Defendant and to close this case.

**IT IS SO ORDERED.**  Entered at Hartford, Connecticut, this 23rd day of September, 2022.


_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[43] In *Hicks*, the Second Circuit affirmed dismissal of Plaintiff's retaliation claim, to the extent it relied on allegations of workplace sabotage because "Plaintiffs' affidavits on this point lack[ed] specifics and [were] conclusory."  *Id.*